SCOTT *vs.* THE CENTRAL RAILROAD AND BANKING COMPANY
OF GEORGIA.

In an action by a stockholder against a corporation, to recover a dividend
declared by resolution of the directors, in general terms, of so much money
per share, evidence that the earnings of the corporation were received in
property other than money, is incompetent, as it alters the legal effect of the
resolution, which is no more admissible than it would be to alter its terms.

Where a corporation makes dividends, payable in dollars, without any limita-
tion, and without directing the payment to be made in any currency what-
ever, the case of *Ehle* v. *The Chittenango Bank*, (24 *N. Y. Rep.* 548,) prevents
an inquiry into the means out of which it determined to make the dividends.
The corporation is concluded by the resolutions directing the dividends.
*Per* INGRAHAM, J.

Before a stockholder can maintain an action for a dividend, he must prove the
making of the dividend, and demand of payment.

What is sufficient proof of the making of a dividend, and of a demand.

THIS action was brought by the plaintiff, as assignee of
Edward B. Crowell, to recover of the defendants the
sum of $5440, being the aggregate amount of several
dividends declared by it during the years 1861, 1862, 1863
and 1864, and remaining unpaid, on eighty-five shares of
its capital stock owned by said Crowell.

The complaint alleges that the plaintiff is and for several
years has been a resident of the state of New York, to
wit, of the city and county of New York. That the
defendants are a corporation created by and existing under
the laws of the state of Georgia, and are and were at the
various dates hereinafter mentioned, located and doing
business as such corporation in the said state of Georgia.
That at the various dates hereinafter mentioned, one
Edward B. Crowell, was, and for more than six years has
been and still is, the owner and proprietor of eighty-five
shares of the capital stock of the said defendants, of the
par value of one hundred dollars per share, and that
during all such time the said Edward B. Crowell was en-
titled, to the extent of and in proportion to said eighty-
five shares, to share in all dividends made or declared by

the said defendants upon their capital stock, and to demand and receive from the defendants all dividends payable on said eighty-five shares. That at various dates, between the 1st day of July, 1861, and the 1st day of January, 1865, and whilst the said Edward B. Crowell was the owner and proprietor of said eighty-five shares of the capital stock of said company, the said defendants made and declared out of their surplus earnings various dividends upon their capital stock, as follows, to wit: between the said 1st day of July, 1861, and the 31st day of December, 1861, one dividend of five dollars upon each and every share of their capital stock; and between the 1st day of January and the 31st day of December, 1862, other dividends amounting to sixteen dollars, upon each and every share of their capital stock; and between the 1st day of January, and the 31st day of December, 1863, other dividends amounting to twenty-three dollars, upon each and every share of their capital stock; and between the 1st day of January and the 1st day of July, 1864, one other dividend of fifteen dollars upon each and every share of their capital stock; and between the 1st day of July, 1864, and the 1st day of January, 1865, one other dividend of five dollars upon each and every share of their capital stock, and amounting in the aggregate to sixty-four dollars upon each and every share of the capital stock of said defendants. That each and every of said dividends were made payable during the same year in which they were respectively declared, and thereafter upon demand. That the said dividends so declared by said defendants were paid to other shareholders of the capital stock of the said corporation, upon and in proportion to the number of shares held and owned by them; but that no part of said dividends or of any or either of the dividends made or declared by the said defendants during said period was ever paid to said Crowell, or upon the shares of stock so held by said Crowell; and at the time of the

demand hereinafter mentioned, there was due and payable from said defendants to the said Edward B. Crowell, *upon demand*, the sum of five thousand four hundred and forty dollars for and on account of dividends upon the eighty-five shares of the capital stock of the defendants so held by him, said Crowell. That on or about the twenty-ninth day of September, 1865, at the office and place of business of said defendants, in the city of Savannah, in the state of Georgia, the said Edward B. Crowell, by his attorney thereto duly authorized and empowered, duly demanded of the defendants payment of said sum so due and payable as and for dividends upon said eighty-five shares of stock held by him; but the said defendants, though they then and there admitted that the above mentioned dividends had been made and declared, and were unpaid and due upon the eighty-five shares of stock so held by said Crowell, refused to and did not pay the same or any part thereof. That thereafter, and before the commencement of this action, the said Edward B. Crowell duly assigned to the plaintiff all of said dividends, and all the claim and demand of him, the said Crowell, for and on account of all of said dividends or sums of money. That none of said dividends have been paid, nor any part of the same, or of any of the same, and there is now justly due, owing and payable for and on account thereof, from the defendants to the plaintiff, the said sum of five thousand four hundred and forty dollars, with interest from said twenty-ninth day of September, 1865. Wherefore the plaintiff demanded judgment against the defendants for the sum of $5440, with interest from the 29th day of September, 1865.

The defendants by its answer admitted the truth of the allegation of the plaintiff touching the existence of the defendants as a corporation created by and existing under the laws of the state of Georgia; and the ownership by one Edward B. Crowell of eighty-five shares of the capital

stock of the defendants, of the par value of one hundred dollars per share, as alleged in said complaint. And the defendants for a first defense denied each and every allegation in said complaint contained, except such as are above and as are hereinafter admitted in the second defense.

2d. For another and separate defense the defendants alleged, that on the 3d day of December, 1861, it declared a dividend out of the earnings of its railroad and general business, of five per cent upon its capital stock, payable on and after the 16th of December, 1861. That on the 3d day of June, 1862, it declared a semi-annual dividend of five per cent upon its capital stock, and an extra dividend of five per cent upon its capital stock, out of its earnings, payable on and after the 14th day of the same month and year. That on the 2d day of December, 1862, it declared a dividend of six per cent upon its capital stock, out of its profits and earnings, payable on the 15th day of the same month and year. That on the 2d day of June, 1863, it declared a dividend of twelve per cent upon its capital stock, out of its profits and earnings, payable on the 15th day of the same month and year. That on the 1st day of December, 1863, it declared a dividend of twelve per cent upon its capital stock, out of its profits and earnings, payable on the 15th of the same month and year. That on the 7th day of June, 1864, it declared a dividend of fifteen per cent on its capital stock, out of its profits and earnings for the six months immediate preceding, payable in currency bankable at the bank of the defendants, so soon as the defendants could receive the amount due to it from the Confederate government, with the option to shareholders that after the 20th of the said month and year they might receive, if they preferred them, in payment of their dividends thus declared, four per cent Confederate certificates or seven-thirty Confederate notes at seventy-five cents on the Confederate dollar, said certificates and seven-thirty notes having at that time depre-

Scott *v.* Central Railroad and Banking Company of Georgia.

ciated to that extent as contrasted with the customary
Confederate notes.  That on the 1st day of December,
1864, it declared a dividend of five per cent on its capital
stock, out of its profits and earnings, payable at such time
and place as might be thereafter determined.  That the
dividend thus declared was, on the 7th of March, 1865,
made payable on demand in the city of Macon, Georgia,
in Confederate treasury notes.  That all of the earnings
and receipts of the defendants, out of which the above
named dividends were declared and made payable, were
received in and consisted of certain promissory notes
called, designated, and known as Confederate notes.  That
said notes were made and issued by the Confederate States
of America, so called, and by laws then existing and en-
forced by military authority in said Confederate States of
America, of which the state of Georgia then formed one;
and that the defendants were compelled in the general trans-
action of their business, in the transportation of freight and
of passengers over their railroad during the periods wherein
said dividends were declared, to receive, and that they did
receive said Confederate notes in payment therefor and
for all services rendered to the public by the defendants.
That during the periods wherein said dividends were de-
clared, all the earnings of the defendants out of which the
said dividends were made payable, were received in and
consisted of said Confederate notes.  That the defendants
did not receive any money, or any representative of money
other than said Confederate notes, during the periods men-
tioned, in payment for their labor and services performed,
and as their earnings as aforesaid.  That all of said dividends,
which are the dividends referred to in said complaint, were
made payable in said Confederate notes, and not in money.
That said dividends so declared as aforesaid were paid in
the said Confederate notes to all the stockholders of the
defendants who desired to receive them.  That the defend-

ants are now, and are at all times have been ready to pay to the said Edward B. Crowell or his assigns, the dividends which were so declared as aforesaid by the defendants upon the capital stock of the defendants, owned by and standing in the name of the said Edward B. That said Confederate notes are still outstanding and unpaid, and that the defendants never converted the dividends due the said Edward B. into money, or into any other valuable thing, but hold them still subject to his order. That during the periods aforesaid, and in payment of the dividends so declared as aforesaid, none of the stockholders of the defendants ever received any thing else than the aforesaid Confederate notes from the defendants.

The action was tried at the New York circuit in April, 1867, before Justice Davis, without a jury, who found the following facts, viz: 1st. That at and during the times mentioned in the complaint, Edward B. Crowell was the owner and holder of 85 shares of the capital stock of the defendants, of the par value of $100 per share. And the defendants were a railroad and banking corporation, created and existing under the laws of the state of Georgia, and having its bank and principal office at Savannah in said state.

2d. That at the several times hereinafter mentioned, the defendants, by and in pursuance of resolutions of the board of directors of said company, made and declared dividends, which were credited to the said Edward B. Crowell, in an account kept by said company with him in its books, as follows:

| | | | | |
|---|---|---|---|---|
| 1861, Dec. 15, | dividend on 85 shares stock, | 5 per cent, | $425 |
| 1862, June 10, | " | " | 10 per cent, | 850 |
| Dec. 15, | " | " | 6 per cent, | 510 |
| 1863, June 15, | " | " | 12 per cent, | 1020 |
| Dec. 15, | " | " | 11 per cent, | 935 |
| 1864, June 15, | " | " | 15 per cent, | 1275 |
| Dec. 12, | " | " | 5 per cent, | 425 |

Scott *v.* Central Railroad and Banking Company of Georgia.

3d. That the dividends of December, 1861, June, 1862, December, 1862, and June, 1863, were declared by resolutions, general in their terms, of so much money. The balance of the dividends, viz. those of December, 1863, June, 1864, and December, 1864, were, by the terms of the resolutions declaring them, made payable in Confederate notes.

4th. That prior to the 26th August, 1865, and prior to the assignment hereinafter mentioned, the said E. B. Crowell requested the defendants to make payment to him of said dividends. And the defendants denied their liability to pay, and refused to pay said dividends or any part thereof, in lawful money of the United States, or otherwise than in notes or obligations of the so called Confederate States, but were ready and willing and offered to pay the same in such Confederate notes.

5th. That the dividends above declared were paid to and received by other stockholders of the said defendants in the currency which was in use and circulated as money in the state of Georgia at the time of the payment of the said dividends, respectively, which consisted chiefly of the notes of the banks of the states of Georgia and South Carolina, and notes of the Confederate States, and not of the legal currency of the United States.

6th. That the defendants did not separate or set apart any portion of its funds or earnings, or any specific notes, securities, property or representatives of money or property, for or as the share of the said Edward B. Crowell, or make any appropriation of said dividends to him or for his benefit, other than by crediting the same to him in an account with said company, as before stated.

7th. That the state of Georgia was one of the seceding or rebel states of the Union, and became and was a member of the so called Confederated States of America, and was, in fact, during the several periods when said dividends were declared, within the usurped jurisdiction, and subject to the military force of said Confederate States, and the

receipts of said defendants in their business were in the currency of the banks of said state of Georgia and the state of South Carolina, (another of the rebel Confederate States,) and in the notes issued as money by the so called Confederate States, and not in lawful money of the United States, and that the earnings of said defendants, out of which said dividends were declared, were made while so receiving the currency above stated, and were based thereupon.

8th. That said defendants, prior to December, 1861, had, and at all times since have had, a surplus fund of accumulated earnings and profits, and has been and is able to pay all their debts and liabilities, including dividends declared during said period.

9th. That before the commencement of this action, the said Edward B. Crowell assigned and set over to the plaintiff in this action the said dividends, and all his, the said Crowell's right, claim and demand against the defendants therefor. And that the plaintiff, at the date of the commencement of this action was, and ever since has been a resident of New York city.

The judge's conclusions of law upon the facts so found, were:

1st. That the dividends of December, 1861, June, 1862, December, 1862, and June, 1863, having been declared by resolutions, general in their terms, of so much money, were payable in the legal currency of the United States. And that the plaintiff was entitled to recover of the defendants, in this action, the whole amount of said last above mentioned dividends, being the sum of $2805, with interest thereon from the 26th day of August, 1865, amounting to $326.73.

2d. That the dividends of December, 1863, June, 1864, and December, 1864, having been, by the terms of the resolutions declaring the same, made payable in Confederate notes, the plaintiff was not entitled to recover therefor,

Scott *v.* Central Railroad and Banking Company of Georgia

3d. That the plaintiff was entitled to judgment for the sum of $3130.73, with costs, and an allowance of $156.58, being five per cent upon the amount found due.

Judgment being entered accordingly, the defendants appealed to the general term.

*John E. Ward,* for the appellants. The defendants by their answer deny the allegation in the complaint that on the 29th of September, 1865, at the office or place of business of the defendants, in the city of Savannah, in the state of Georgia, Edward B. Crowell, by his attorney, duly demanded of the defendants payment of the said dividends. The plaintiff's allegation is, that these various dividends were payable respectively upon demand. Until, therefore, a demand had been made, according to the plaintiff's complaint, no cause of action accrued either to Edward B. Crowell or to any one claiming under him.

I. Whenever it is essential to the cause of action that the plaintiff should have requested the defendant to perform his contract, such request must be alleged and proved. (1 *Chit. Pl.* 329, 330. *Stephen's Nisi Prius,* 381, *and notes.* 3 *Blatch.* 251. 6 *Hill,* 297, 541, 24 *Wend.* 205. 8 *Hill,* 337. 28 *Wend.* 530. 8 *Georgia Rep.* 178. *Redfield on Railways,* 598. *State* v. *B. & O. R. R.,* 6 *Gill,* 363. *Ohio City* v. *Cleveland and Toledo R. R.,* 6 *Ohio Rep.* 489.) It is unnecessary to weary the court by more than a passing notice of this principle, asserted by all the elementary writers and sustained by all the judicial decisions. It was admitted by the counsel for the complainant in the court below; it is asserted by the learned judge in his decision in this case; but the force of the principle is sought to be avoided by the allegation that "there is evidence in the case showing that the bank was not ready to comply with a demand, but has declared that it will only comply with it in a manner which is no legal compliance. This is equivalent to a waiver of demand." If the

fact be as found by the judge, it may be conceded that it was equivalent to a waiver of demand. But where, in the testimony, is found the evidence that the bank had declared that it "would only comply in a manner which is no legal compliance?" The learned judge relied, for the establishment of this fact, upon the letter of Crowell, dated August 17, 1865, and the reply of Anderson, the president pro tem, dated August 26, 1865. The letter of Crowell is not a demand for these dividends, but an inquiry into the then condition and prospects of the company, and as to what dividends had been made in the past four years. The reply of Anderson is not a refusal to pay the dividends, but a statement of his opinion, as to future dividends, and of fact, as to the currency in which past dividends had been declared. The complaint neither considered the letter of Crowell as a demand, nor the reply of Anderson as a refusal, nor as a waiver of demand. He alleges that, on the 29th of September, 1865, after this correspondence had taken place, at the office and place of business of the defendants, the demand was made by a duly authorized and empowered attorney. There was not even an effort made to prove this allegation.

II. These dividends sued for were declared at different periods. The last three were not allowed by the court below, and therefore are not now the subject of controversy. The dividends for which the court below gave judgment against the defendants, are :

1. December 15, 1861, 5 per cent, . . . . . $425 00
2. June 15, 1862, 10 per cent, . . . . . . . 850 00
3. December 15, 1862, 6 per cent, . . . . . 510 00
4. June 15, 1863, 12 per cent, . . . . . . . 1,020 00

Total, . . . . . . . . . . . . . . . . $2,805 00

These are the dividends before the court, now the subject of controversy. The manner in which these divi-

dends were respectively declared will be seen by the resolutions declaring them. The currency in which these dividends were to be paid, may be found in the testimony of Mr. Cunningham, the cashier of the bank. His honor in the court below alleges that the bank showed that it was not ready to comply with the demand, and therefore that there was a waiver of the demand. If such be the case, we have a right to see what was the condition of the bank which rendered it unable to comply with the demand. "Every dividend after June, 1861, was declared and made payable in Confederate currency." Such being then the undisputed fact, that these dividends were all declared and made payable in Confederate currency, that currency having ever since been held subject to the order of the complainant, or any one claiming under him, has he a right to recover from the defendant any other currency that which formed the basis of the dividend declared? The Central Railroad and Banking Company is simply an association or partnership of persons, who, having agreed to combine their property or labor, or both, for the purpose of a common undertaking, and the acquisition of profit to be proportionately shared between them, have obtained a legislative act, confirming the contract so as to limit the risk of the partners and render definite the extent of the hazard. This union of the will of the parties and of the act of the legislature, creates the corporation. The bank and the road were the mere instruments by which profits were to be produced, and belong exclusively to the corporate body, which is entirely a separate person. It is a mistake to suppose that the stock of an individual consists of so much money or property owned by him in the bank or corporation. The money in bank is the property of the institution, to the ownership of which the stockholder has no more claim than a person who is not at all connected with the bank. The stockholder has an entire and a perfect ownership

over his own stock, which consists of a certificate of the bank or corporation, that the stockholder is entitled to so many shares of the capital stock. It entitles him to his proportion of the profits or dividends which may be declared from time to time; and, when the institution closes its business, to his proportion of the capital and profits which remain to be divided. (*Brightwell* v. *Mallory,* 10 *Yerg.* 196.) In declaring these dividends, the directors act for the shareholder and as 'his agents, and their acts become his own; and, as such corporator, he is bound by what they do in declaring the amount of the dividend and the time and place of payment. (*King* v. *Patterson and Hudson R. R. Co.,* 5 *Dutch.* 89.)

III. Dividends can be declared only out of the actual earnings of the company, and if they be declared when not earned, they must be declared either through mistake or fraud; if by fraud, it is an injury to the shareholders, of which the directors are guilty, and for which they may be prosecuted and punished. (*Redfield on Railways,* 61.) If by mistake, any one injured is entitled to relief either in law or equity. (*Redfield on Railways,* 597.) But this relief is certainly not to enforce the payment of dividends declared through mistake, but to prevent their payment. Why should not the party be relieved from the unpaid dividend by showing that it had been declared under a mistake? (*Jones* v. *Terre Haute and Richmond R. R. Co.,* 29 *Barb.* 359.)

IV. Admitting that the declaration of the dividends created the relation of debtor and creditor between the bank and the stockholder, the consideration of that indebtedness being illegal, the debt itself cannot be collected. (6 *Gill,* 386. *Scudder* v. *Thomas,* 55 *Georgia Rep.* 364.)

V. If any portion of the debt can be collected, only an amount equal to the value of Confederate money in legal tender notes, at the times the dividends were respectively

declared, can be recovered. (*See opinion of Chief Justice Chase in McLaughlin* v. *O'David,* 34 *Georgia Rep.* 485.)

*Wm. H. Scott,* for the respondents. I. The plaintiff is entitled to the aggregate amount of the different dividends allowed him by the judgment appealed from, as a debt for that amount due to him from the defendants. 1. The plaintiff's assignor stands to-day credited upon the defendants' books of account with the amounts of such dividends severally, as of so much money. According to their own books, he is as much their creditor for the aggregate of those amounts, as any other person to whom it appears by their books to be indebted. 2. These amounts were so passed to the credit of the plaintiff's assignor, in the account kept by said company with him, in their books, in pursuance of resolutions of their boards of directors, general in their terms, declaring dividends of so much money. 3. It has been distinctly found by the judge before whom the case was tried, as a matter of fact, "that the defendants did not separate or set apart any portion of their funds, or any specific notes, securities, property, or representative of money or property, for, or as the share of, the said Edward B. Crowell, or make any appropriation of said dividends to him, or for his benefit, other than by crediting the same to him, in an account with said company." 4. Under these circumstances, the present case is directly within the principles of the case of *Ehle* v. *The Chittenango Bank,* and directly covered by the language of that part of the opinion in which the court says, " that the bank became the *debtor* of the stockholders when the dividend, by the terms of the resolution, was payable." (24 *N. Y. Rep.* 548. *King* v. *Patterson and Hudson R. R.,* 5 *Dutcher, N. J. Rep.* 504. *State* v. *Balt. and Ohio R. R.,* 6 *Gill,* 363. *Phil. Wil. and Balt. R. R.* v. *Crowell,* 28 *Penn. Rep.* 329. *Ohio City* v. *Cleveland and Ohio R. R.,* 6 *Ohio Rep.* 329. *Hulbert* v. *Carver,* 40 *Barb.*

245. 2 *Redfield on Railways*, 3d ed. 610. *Carpenter* v. *N. Y. and N. H. R. R. Co.*, 5 *Abb. Pr.* 278.)

II. No question is made by the defendants as to the powers of the different boards of directors, by which the several dividends were declared, or as to the regularity of the dividends themselves. Their defense is based wholly on the ground that the earnings and profits, out of which the dividends were declared, were not made in lawful money of the United States, but in the currency of the banks of the states of Georgia and South Carolina, and in the notes issued as money by the so called Confederate States. They seek not to avoid the entire dividends, but merely the plaintiff's share of them, by paying such share entirely in the currency of the exploded confederacy. 1. It would seem to be a sufficient answer to this defense to simply point to the end which it proposes, viz. the payment of the plaintiff's demand in a medium of payment which was originally issued in violation of the laws of the land, and which it would be equally unlawful for the defendants to use, or the plaintiff to accept as money, in any sense. 2. The defense, moreover, is an attempt to contradict the resolution declaring the dividends, and avoid their legal effect by parol proof. (*a.*) The dividends having been declared as of so much money, and dividends being legally declarable and payable only out of earnings and profits, as contradistinct from capital, the legal inference from the terms of the resolution is, that the earnings were made, as the dividends were declared, of money, or what the company then considered and treated as the equivalent of money. (*b.*) It would be an obvious contradiction of this necessary inference, and, therefore, of the legal effect of the resolution, to hold that the earnings were not in money, but in something else. (*c.*) Especially in view of the discrimination made by the company itself, in the modes of payment and of the different dividends. (*d.*) The resolutions by which the dividends were declared

are the best and only proper evidence of the fact, amounts and mode of payment of the dividends, are final and conclusive upon all these points, and cannot be explained away or changed by parol evidence. The court will not, therefore, look behind the resolutions, to determine in what the dividends are payable. It will look only to the resolution declaring the dividend, and not to the earnings or any thing *aliunde*. (*Brown* v. *Lehigh Coal and Nav. Co.*, 49 *Penn. Rep.* 270. ) (*e*.) Earnings can never be a criterion by which to determine in what a dividend is payable. If they can be referred to for this purpose, then a corporation of this state might refuse payment of a dividend in lawful money, upon the ground that the earnings were in bank notes. The court will not go into such an inquiry in the present case, any more than it would in the case supposed. 3. This is an action at law between the plaintiff and corporation alone, brought directly upon the dividends, to recover the amounts thereof. It may be conceded that in such an action a dividend might be impeached collaterally, on the ground of fraud. But it is insisted that it is only upon some such ground that it can be called in question collaterally, in an action brought upon the dividend itself. If the dividends are impeachable upon any other ground, such as that suggested by the defense, it can only be in a suit brought directly for that purpose, in which all necessary parties are joined, and in which a proper case is made out for the equitable interference of the court, as suggested in the opinion of Justice Davis. (*Carlisle* v. *S. East. R. R. Co.*, 6 *Railway Cases*, 670, 685.) 4. But no case has been made out by the defendants, upon which even a court of equity would interfere with the dividends. (*a*.) " The investigation of the affairs of the company, and the ascertainment of a clear surplus to warrant a dividend, declaring that dividend by a resolution of the board of directors, fixing the period for its payment, giving publicity to it, carrying the amount on the books

of the company to the debit of profit and loss, apportion-
ing the same among the stockholders by filling up and
signing checks upon the bank where the funds were
deposited for the purpose of being delivered to each stock-
holder when called for; these are all acts which the com-
pany, by its officers, might lawfully perform. These acts
became binding · upon the company in its corporate
capacity, and gave to the stockholders, individually, rights
which the directors and officers of the company could not
afterwards take from them." (*Le Roy* v. *The Globe Ins.
Co.*, 2 *Edw. Ch.* 671. *King* v. *Patterson and Hudson R. R.*
5 *Dutch.* 504. *Brown* v. *Monmouthshire R. R. and Canal Co.*,
4 *Eng. L. and E.* 113. *Stevens* v. *South Devon Railway*, 12
*id.* 229. (*b.*) It is clear that in a court of equity no attack
could be made upon the plaintiff' dividends alone. They
are merely the plaintiff's shares and proportions of general
dividends which stand upon the same footing with the
shares of the other stockholders, and can only be inter-
fered with or set aside upon some ground of objection
common to the dividends at large. Now, in respect to the
dividends of other stockholders, it has been distinctly
found by the justice, before whom the case was tried, as a
matter of fact, that said dividends were paid and received
by other stockholders of said defendants in the currency
which was in use and circulated as money in the state of
Georgia at the time of the payment of the said dividends
respectively, which consisted chiefly of the notes of the
banks of the states of Georgia and South Carolina, and
notes of the Confederate States, and not of the legal
currency of the United States." (2 *Redfield on Railways*,
3*d. ed.* 610.) The dividends were, therefore, not merely
declared, but their proportions of the same were afterwards
paid to and accepted by almost if not all of the other
stockholders. And upon what ground could even a court
of equity at this late day, and after such changes in the
positions of parties, undertake to overhaul and readjust

Scott *v.* Central Railroad and Banking Company of Georgia.

these paid and settled dividends? (*c.*) Besides, at the times when the dividends were declared, and when they were paid, both the currency of the banks of Georgia and South Carolina and Confederate notes—in all of which the earnings were in fact made—circulated in Georgia as money, and were so treated, both by the defendants in paying, and the stockholders in receiving the dividends which have been paid, and were, in the years 1861 and 1862, but little below the par of gold. Now, what equity would there be in compelling the plaintiff, whose assignor had no such option as that enjoyed and exercised by the other stockholders, to receive at this late date the amount of his dividends in worthless stuff left on hand, or since bought up by the defendants, specially for that purpose? (5.) Upon what ground then, can this court, sitting either as a court of law, or as a court of equity, question or interfere with these regular dividends of this foreign corporation? What jurisdiction would it have to interfere with them even upon a direct application for that purpose? Especially, how can it interfere with them upon the facts of this case. The company itself makes no such application. No stockholder makes it. Not a word is breathed against the regularity of a single one of the general dividends. They are still wholly unrescinded. All the stockholders who chose have received their proportions in a mode of payment which they have been satisfied to accept. Their receipts have been recorded in the company's books. Every thing that could be done to confirm and·ratify the dividends has been done by all parties concerned. How then can the court interfere with or refuse to recognize the dividends? 6. But as long as the dividends stand, the plaintiff's shares and portions of them must also stand. They are integral parts of, and must stand or fall with the entire dividends. No attempt having been made, nor after all that has been done, being practicable, to set aside the dividends generally, it is impossible to see upon what

grounds the payment of the plaintiff's proportions can be resisted; and if entitled to be paid, they must be properly paid in lawful money of the United States. (*Jones* v. *Terre Haute and Richmond R. R. Co.*, 17 *How. Pr.* 529.)

III. A demand of the dividends sued for was sufficiently proved. 1. The judge has distinctly found, as a matter of fact, that prior to the 26th of August, 1865, and prior to the assignment hereinafter mentioned, the said E. B. Crowell requested the defendants to make payment to him of said dividends. 2. The judge having by mutual consent, been substituted in place of the jury, to try the case upon the facts as well as upon the law, this finding is conclusive upon the point of request, and cannot be reviewed upon this appeal if there is any evidence whatever to sustain it. (*Parker* v. *Jervis*, 34 *How. Pr.* 254. *Marine Bank* v. *Clements*, 31 *N. Y. Rep.* 43.) 3. The finding is fully sustained. (*a.*) By the evidence of the witness Crowell, showing that in February or March, 1865, he went to the office of the defendants in Savannah, found it closed; that they had no place of business; that their books, records and assets had been sent into South Carolina; and that there was no person in Savannah to answer for or represent them in any way. This evidence would have been sufficient to sustain an averment of demand, even as against the indorser of a bill of exchange or promissory note. (*Williams* v. *Matthews*, 3 *Cowen*, 262. *Stewart* v. *Eden*, 2 *Caines*, 127.) (*b.*) By the letter of E. B. Crowell, (the plaintiff's assignor,) to the defendants, of August 17, 1865, in which he follows up the foregoing attempt at a personal demand for the dividends by distinctly inquiring of the defendants what they "propose doing in respect to such dividends." (*c.*) Here was a fair opportunity for the defendants to perform their duty and avoid suit. And that is the only reason, purpose and object of the rule requiring a demand before suit, and all that is necessary to constitute a demand in such cases. (*Walradt* v. *Maynard*, 3 *Barb.* 584.)

HARVARD LAW SCHOOL LIBRARY

Scott *v.* Central Railroad and Banking Company of Georgia.

IV. Independent of the demand proved and found by the court, the further finding of the court that the defendants "refused to pay said dividends, or any part thereof, in lawful money of the United States," is fully sustained by the whole tenor of the defendants' letter of 26th August, 1865, in answer to the letter of E. B. Crowell, of August 17th, and especially by that part of it in which the defendants state, contrary to the truth and with an evident intent to mislead and deceive the plaintiff's assignor, that every dividend after June, 1861, was declared and made payable in Confederate currency. This was clearly equivalent to a denial of any indebtedness to the plaintiff's assignor on account of the dividends, which, of course, included a refusal to pay them, and therefore amounted to a dispensation of any demand. *Lex neminem cogit ad vana seu inutilia.* (*Carroll* v. *Cone,* 40 *Barb.* 223. *Walradt* v. *Maynard,* 3 *id.* 584. *Miles* v. *Boyden,* 3 *Pick.* 213.)

*Ward,* in reply. The claim of the respondent, as presented in the points submitted by him, may be reduced to two propositions: 1. That, as it has been distinctly found by the judge, before whom the case was tried, that the defendants did not separate or set apart any portion of their funds or any specific notes, securities, property or representative of money or property for, or as the share of the said Ed. B. Crowell, other than by crediting the same to him, the case is brought within the principle established by the Court of Appeals in the case of *Ehle* v. *Chittenango Bank,* (24 *N. Y. Rep.* 548,) to wit: That the bank became the debtor of the stockholder, when the dividend, by the terms of the resolution, was payable. In the case of the Chittenango Bank, no principle was involved in common with that in the present case. In that case no question whatever was made as to the currency in which the profits of the bank, from which the dividends were declared, had been received by the bank. In the present

case this is the whole question involved. In the Chittenango Bank case, the language of the court is: "There was no authority of the board of directors to declare, that a dividend of the *cash* profits of the bank should be paid in depreciated bank notes." The fact is thus presumed to have been established, that in that case the profits of the bank, from which the dividends were declared, were *cash* profits, or profits *in actual dollars*. Such being the fact, it would surely have been most unjust to have required the stockholder to receive his dividend in a different and a depreciated currency. In the present case, the reverse state of facts exists. The profits, from which the dividends were there declared, were all not only made and received in a depreciated, but in a worthless and illegal currency, and the stockholder claims the dividend in good currency.

In the Chittenango Bank case, the court properly held that "the term 'New York state currency' must be held to mean what the ordinary signification of those words would imply, *unless by some general known usage* some other technical meaning can be attached to it;" and that the testimony of the cashier, as to what *he* understood the phrase to mean, did not prove any such usage, or that the *directors* understood the term as he did. In the present case, no attempt is made to prove what the *cashier* understood by any phrase in the resolution, but to prove the *fact*, that these dividends were all declared out of the earnings of the defendants; that those earnings all consisted of treasury notes of the Confederate government, and that the dividends on the stock of the defendants, were declared and made payable, with one exception, in Confederate notes. Justice Davis, in relation to the case, quoted and relied upon, very properly, therefore, used the following language: "I think the question is not controled by the decision of the Court of Appeals in the case cited. That case evidently turned uopn the point that the phrase

' the currency of the state' must be regarded, without any explanation, as legal tender."

The second proposition upon which the respondent rests his claim is: That the resolutions, by which the dividends were declared, are final and conclusive upon all points, and cannot be explained away or changed by parol evidence. And to sustain this proposition, he refers the court to the case of *Brown* v. *Lehigh Coal and Navigation Co.*, (49 *Penn. R.* 270.) By reference to the facts of that case, and the principles established, it will be seen that no such proposition as that asserted by the defendants' counsel, was ever mooted. The question involved in this case is thus reduced to one of evidence. It was upon a mistaken construction of the rule of evidence, that the justice in the court below, placed his decision. There was no difference or distinction between the dividends allowed and the dividends rejected, except in the wording of the resolutions by which they were declared. It is contended that by these resolutions a debt was created which must be paid in money, because they can neither be varied or explained. Our answer is, that there is nothing in the wording of the resolutions, which requires either to be changed or varied, to relieve us from this obligation, and that we seek neither to change nor vary them, but to read them by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of them. And this we have a right to do. The rule of excluding oral testimony is directed only against the admission of any evidence of *language* employed by the parties in making the contract, other than that which is furnished by the writing itself. (*Greenleaf on Evidence*, §§ 277, 282, 284, 286, 297. *Faw* v. *Marstetter*, 2 *Cranch*, 10, 12, 13, 29, 30. *Blossom* v. *Griffin*, 13 *N. Y. Rep.* 569.) "In construing this, as every other writing, it is proper to look at all the surrounding circumstances—the pre-existing relation between the parties—and

then to see what they mean when they speak." (*Phelps* v. *Bostwick*, 22 *Barb.* 314.) " Contracts must always be construed in reference to the subject matter to which they relate, and in the light of cotemporaneous facts and circumstances." The respondent rests his claim upon the principle, which he sustains by authority, that the judge having found the fact that a demand was made, his decision cannot be reviewed, if there is any evidence whatever to sustain it; and proceeds immediately to show that there was, and could have been no evidence to sustain it, because when Crowell went to make the demand, there was no person of whom the demand could be made—their banking house being in the possession of United States troops. There is error, in point of fact, in the statement that their books and assets had been sent over into South Carolina. Their books had been transferred, to where by law they had a right to go, to Macon, in the state of Georgia. (*Act of March* 2, 1865, *p.* 46.) This is neither a demand, nor does it afford an excuse for not making a demand. (*Phelps* v. *Bostwick*, 22 *Barb.* 318.) " The defendant was not liable to an action for this money, until a distinct demand had been made upon him personally, to restore it to the plaintiff, and he had refused to do so."

MULLIN, J. Before proceeding to consider the questions arising on this appeal, it is necessary to ascertain the points decided by the Court of Appeals in the case of *Ehle* v. *The Chittenango Bank*, (24 *N. Y. Rep.* 548.)

In that case the bank declared a dividend payable in New York state currency. This currency was offered to the plaintiff, but he refused it, as it was then at a discount of one fourth of one per cent, and demanded that he be paid in gold and silver or its equivalent. The general term of the Supreme Court held that the plaintiff was bound to receive the dividend in the property in which it was declared, and that he was not entitled to demand gold

or silver. The judgment of the general term was reversed, the Court of Appeals holding that the dividend, when declared, was payable in money; that it thereupon became a debt due from the bank to the stockholder, and could be paid only in the legal currency of the country if insisted upon by the stockholder.

The bank bills, it will be remembered, were tendered and refused. They were not money, and nothing but money could satisfy the plaintiff's claim.

It necessarily follows that if a dividend cannot be paid in bank bills, which circulate as money, it surely cannot be paid in the worthless bills of an equally worthless government.

I am unable to perceive why, within the case cited, the plaintiff was not entitled to recover for the dividends expressly declared to be payable in Confederate bills. I had supposed that it was competent for a corporation that had acquired property other than money sufficient in amount to authorize a division of it among the stockholders, to make such division, and that the stockholders were bound to receive it in the property appropriated to them. But if nothing but money will pay a dividend, then, of course, a dividend in property other than money cannot be made.

It is supposed that a different rule prevails where the property divided is the same identical property earned; that when this fact appears, then a dividend in property is admissible. This presents the question, preliminarily, whether the evidence that the earnings of the corporation were received in property other than money is competent; or whether it is not altering the resolution of the directors declaring the dividend, which is the evidence of the indebtedness of the corporation to its stockholders, and is, therefore, inadmissible. If the resolution declaring the dividend is the written admission of an indebtedness, payable in legal currency of the country, and the property

received, and out of which the dividend is declared, is of less value than it would be if paid in money, then it is incompetent, as it alters the legal effect of the resolution, which is no more admissible than it would be to alter its terms.

If the resolution declaring the dividend should contain a recital that it was made from the same property which it had earned in its business, this technical difficulty might be obviated; but if the corporation can only divide money, as would seem to have been held in the case cited, then it could make no difference whether the recital was incorporated in the resolution or not.

It is not necessary, however, to discuss the question as to the effect of such a recital. It is not in the case, and I am quite certain that the fact cannot be proved by parol, so as to enable the company to lessen the amount to be paid to the stockholder. It is a matter of very little importance to the corporation whether it divides the property earned, or converts it into money and divides it. The loss, if any, falls on the stockholders; and as they only are to be affected, I am unable to perceive any reason why a dividend in property is not lawful.

It is conceded that a stockholder must prove a dividend before he can maintain an action for a dividend. And the only remaining question is whether a dividend is proved, in this suit.

The only evidence on the point is that of the stockholder himself, who swears that he went to Savannah in February or March, 1865, and was unable to find the defendant; its place of business was occupied by the Federal army, and the officers had gone, as he was informed, into South Carolina. In August, 1865, after the return of Crowell from the South, he addressed to the defendants a letter in which he stated that he still held his stock in the company; that he had received no dividends during the war, and knew nothing of the condition of the company. He desired

Scott *v.* Central Railroad and Banking Company of Georgia.

to be informed of the present condition and prospects of the company, and whether any, and if any, what dividends had been declared during the last four years, and what it was proposed to do in respect to them. This letter was answered by the president, on the 26th of the same month. After detailing the condition of the defendants' road, and its prospects, the letter proceeds as follows: "The company regularly declared dividends up to December, 1864, but every dividend, after June, 1861, was declared and made payable in Confederate currency. The United States have seized all our Confederate notes, bonds, &c."

It was not true that all the dividends after June, 1861, were declared or made payable in Confederate currency. When this letter was written, that currency was utterly valueless, and demand would not have made it any more valuable.

But if I am right in supposing that the defendants were liable for the four dividends above referred to, then a demand was necessary, unless the defendants by misleading Crowell, have precluded themselves from insisting upon a demand. I do not think that misleading Crowell, if he was misled, could estop the defendants from insisting on proof constituting so essential an element in the plaintiff's cause of action. No demand was proved. The letter of Crowell does not demand the payment of the dividends. He wanted information which was necessary to enable him to make a demand. No one reading the letter would imagine that the writer was calling for the payment of dividends; and surely so important a matter should not be left to conjecture. It should be proved by as high evidence as is required to establish any other fact in the case.

The defendants' president, in his reply, was not as ingenuous as a man in his position should have been, when dealing with one of his stockholders; but that does not relieve the plaintiff from the performance of a manifest legal duty.

The judgment should be reversed, and a new trial ordered, costs to abide the event.

PECKHAM, J. I concur in the result of the opinion of brother MULLIN, in this case, and upon the ground assumed; but with great respect I differ with him on the first ground presented.

It is in proof that the dividends recovered by this judgment, of the defendant, were all made from its profits, and that those profits were all in the currency of the so called Confederate government; that every dollar was in that currency. The defendants had nothing whatever to divide, except Confederate notes. In such a state of facts the defendants made the dividends recovered. They were made, in terms, out of the profits of the defendants. I think they were, under these circumstances, payable in Confederate currency. The case cited, of *Ehle* v. *The Chittenango Bank*, (24 *N. Y. Rep.* 548,) in my judgment sustains that position. There the dividend was declared payable in "New York State currency." The Court of Appeals, however, held that the bank had $6000 surplus *money* to divide, and the dividend should be, and should be held to be of that money, and payable only in money— in the current coin of the United States. So here, the dividend could only be held to be of the thing in the defendants' possession to be divided; which was Confederate money.

Under the circumstances prevailing in Georgia at the times of these dividends, there being open war by the Southern states against the government, and a separate and peculiar currency established there, in which alone the dealings of the people there were transacted, the dividends would be understood by all as payable in Confederate currency. The defendants would not have been able to have declared them payable in the coin or currency

Scott *v.* Central Railroad and Banking Company of Georgia.

of the United States. We may safely say it had not the means to do so.

To my mind it would be wholly unjust in such a case to hold that these dividends must be held to be payable in the currency of the United States, and that the truth of the case could not be shown by the surrounding circumstances, as to the real thing to be divided. It should be borne in mind that the stockholders of this company were substantially the company, and they had these profits to divide among themselves. The corporation is the mere machinery through which the business is transacted.

INGRAHAM, J. I can see no reason why the resolutions of the corporation as to the dividends made do not conclude them. The corporation had the power to declare in what the dividend should be made, unless the case of *Ehle* v. *The Chittenango Bank*, (24 *N. Y. Rep.* 548,) may be considered as prohibiting such a dividend. That relates to a bank organized under the law of this state, and seems to be decided on the supposition that a bank could only divide its profits in money. Wright, J. says: "There was no authority to declare a dividend of the cash profits of the bank payable in depreciated bank notes." In the former part of the opinion he says: "The dividend declared was not of uncurrent bills or property possessed by the bank, which might be specifically divided among the stockholders, but was a portion of the surplus or net earnings." The reasonable construction of this case is, that the corporation might divide any specific property it held among the stockholders, but when it made a dividend of profits or surplus, it must be made payable in money.

Whether there is any thing in the laws of Georgia which confines dividends to profits, does not appear in this case, but it does appear that the defendants did make the four dividends, payable in dollars, without any limitation, and without specifying the payment to be in any currency

whatever.   The case referred to, I think, prevents an inquiry into the means out of which they determined to make the dividend.   They did not limit it; and without such restriction, (whatever other effect might be given to it, with such limitation,) I think the corporation is concluded.

I think, also, the letter of the stockholder was, under the circumstances, sufficient proof as to a demand.   He had been to the place of business of the company and found the same closed and the officers departed from the same. No demand could then be made, and no other was necessary.   The subsequent letter, inquiring what they intended to do about the dividends, was answered by saying that the corporation had made all the dividends payable in Confederate currency, (which was not true,) and that the United States government had seized all their Confederate notes, bonds, &c.   He had a right to conclude from this letter that a further demand was unnecessary.

I think the judgment should be affirmed.

Judgment reversed, and new trial granted.

[NEW YORK GENERAL TERM, November 2, 1868. *Ingraham, Mullin* and *Peckham,* Justices.]