Sedgwick, Ch. J.
This opinion will be confined to the proposed distribution of the $15,526,590 of stock. As to the other branches of the case, I have held that on the proofs there should not be an injunction. The defendant, the Western Union Telegraph Company, made an agreement that contains the following provision: “The Western Union Telegraph Company *421 shall take such, proceedings as it may be advised to cause its capital stock to be increased, by an addition to its present outstanding stock of $88,926,590, represented by shares of $100 each, and shall issue and deliver the same to the said Union Trust Company for distribution as follows: $15,526,590 to holders of its present shares, the same being to represent its investment of earnings in the purchase, construction and equipment of additional lines, wires and its general plant since the first day of July, 1866,” &c., &c.
The statutes have made provision for increase of capital by telegraph associations of this kind. By section 18 of the act of April 12, 1848, it shall be lawful for any association of persons organized under the act by their articles of association to provide for an increase of their capital and of the number of the association. The 24th of the articles of the association provided that “whenever the directors shall determine that it is for the interest of the company to extend its business by adding to the number of wires or conductors upon the lines aforesaid, or by constructing any line or lines to operate in connection therewith, they shall enter their determination upon the minutes at large, and all such additions shall be made by an increase of the capital stock and in no other manner. The board shall fix the amount of increase necessary for the purpose aforesaid.” The agreement does not propose to make any addition by means of that part of the contemplated increase of capital that is now under consideration. A comparison of the agreement with the 24th article shows that the increase of capital referred to by the former is not authorized by the latter. The article says that the addition for wires, conductors and lines “shall be made by an increase of the capital stock, and in no other manner.” The agreement, however, provides that the increase of $15,526,590 is to be distributed to present shareholders to represent the *422 company’s investment of earnings in lines, wires and general plant since July 1, 1866. •
If a suggestion be made that if the articles had been obeyed these lines, &c., should have been added by the increase of capital stock, and the present intended distribution is to compensate the shareholders for the departure from the articles, it may be sufficient at this point to say that the wrong as to the present or past shareholders is not redressed by delivering to them shares of the proposed increase of capital stock, inasmuch as that does not take out. of the former investment the former earnings that might have gone to them in their individual right, but, instead of earnings, gives them shares in a capital, undivided, and with but a future right to earnings. To state it in another way, if the additional lines, &c., had been acquired under article 24, then the persons from whom they had been acquired would have had capital stock, and-the present' shareholders individually would have had the earnings ; but the agreement leaves the earnings where they had béen invested, and gives capital to the shareholders.
The increase of the capital stock now under consideration is not that provided for by the act of May 2,1870. Chapter 319 of the Laws of 1875, amends section 8 of chapter 265 of the Laws of 1848, so as to make it lawful for any telegraph association that has omitted to provide in its articles for an increase in its capital, thereafter, in a prescribed manner, .,to “provide for an increase thereof, and the number of shares into which the same shall be divided.” This act gives the power to the Western Union Telegraph Company'to increase the capital or capital stock. The individual defendants, who are directors of that company, have power to make any rightful use of the increased capital or capital stock. The proof shows that they purpose to use it in the manner described in the agreement. *423 The question is, Have they the lawful power to use it in that manner, or is the proposed use lawful as to the plaintiff and the other shareholders, in whose behalf he brings this action ?
What is the nature of capital or capital stock ? In Burrall v. Bushwick R. R. Co. (75 N. Y. 211, 216), the court said: “The capital stock is that money or property which is put into a single corporate fund by those who by subscription thereto become members of a corporate body.” A merely verbal application of this would involve the idea that there would be no capital or capital stock until individuals had become shareholders, and had paid to the company money, or had delivered property to it for their shares. The definition was made in respect of a corporation where shares had been taken and money paid in for them. If it be necessary to consider that a corporation has a capital or capital stock before it confers shares in it upon persons, then the capital or capital stock at that point is the legal faculty and practical ability to dispose of shares of it to individuals in a proper manner for corporate purposes. Judge Comstock said, in People ex rel. Bank of the Commonwealth v. Comm’rs of Taxes, &c. (23 N. Y. 192, 220), ‘‘ that the -capacity which a corporation has within its charter of receiving subscriptions and payment for stock and then issuing it to the individual who subscribes and pays is a species of valuable right.”
The officers or directors who are to use this power of disposition use it in trust. They are trustees, and are bound to use the power, not only as directed specifically by statute, but under the general obligations of trustees to cestui que trusts. In the present case the directors are, in disposing of shares in the proposed increase of capital stock, to be considered as trustees with trust obligations to the plaintiff • and other shareholders who already hold shares of the present capital stock. The duty of the trustees is to *424 dispose of the sháres in such a manner that value shall be returned to the corporation for its business purposes. The trust obligation, at the least, is to Obtain as much real value as possible. The statute intends that actual value shall be returned equivalent in amount to the nominal" value. The statute does not specifically say so, but that is implied in permitting the increase of the capital to an amount in dollars. The statute does not mean that the increase is consummated by the consent of the shareholders and the votes of the directors that it shall be made, but it extends to the actual returns to be made to the company upon its disposing of shares. Various provisions imply this. One instance is in section 4 of chapter 471 of Laws of 1853: “The liability of any share or stockholder in any company organized under this act, as provided in the act of which this is an amendment (that is, a liability for 25 per .cent, of the amount of the stock held), shall only apply to the amount due by any such share, or share or stockholder in such company, and unpaid, or for any such share or stock.” This statute is inconsistent with the company’s disposing of shares for anything less than the actual equivalent of the nominal value of the share. It is not intended to declare here what are to' be the specific form or forms of value for which shares may be issued, or what credit may be given on subscription. Whatever may be the form, it ■must actually add, or provide for adding, means not before possessed to the corporation for making profits for the shareholders.
The terms of the agreement which the directors propose to carry out do not provide or contémplate that the distribution of the new shares among the present shareholders shall be made upon equivalent value being returned, or being promised to be returned, by the 'shareholders ; nor, indeed, upon any new value to the company.
*425 It may be suggested that this overlooks the provision of the agreement that the shares to be distributed represent the company’s investment of earnings in the purchase, construction and equipment of additional lines, wires and general plant since July 1, 1866, and as these earnings are or were due to, or should have been divided among shareholders, that an acceptance of stock that represents them will be a release by the shareholders of the earnings, and is the same in effect as if there had been a severance of the earnings from the other property of the corporation, a delivery to the shareholders, a return to the company in the shape of capital.
In Howell v. Chicago & N. H. R. Co. (51 Barb. 378, 380), Judge Ingbaham, before holding that the court should decline to exercise its equitable jurisdiction over the defendant, in view of the subject-matter of the controversy and of the defendant being a foreign corporation, said that under ordinary circumstances, when the company has earned a dividend and they desire at the same time to retain the money so earned for the purposes of the company, either in making improvements or for the payment of its debts, it would be no violation of law to retain such moneys, and in lieu thereof to issue to the stockholders a corresponding amount of stock. The election to do either rests with the board of directors, and if the company has power to increase the capital stock for any purpose, either mode of making such increase is not a violation of law. ‘ ‘ Having this power to increase its capital, it becomes immaterial whether such increase is made by awarding the stock to stockholders as dividends in lieu of money, retaining the money for the purposes of the company, or by paying the stockholders the dividends in cash from the earningsof the company, and selling the stock in the market to raise money for the use of the corporation.”
*426 I cannot, and do not, think that Judge Ingraham meant by' these remarks, which he made passingly before he dismissed the action, to overlook the fundamental rights of shareholders, and to say that a corporation making a dividend of earnings could, against the will of the shareholder, oblige him either to go without earnings or else to reinvest them in the capital. A few months after the decision referred to. Judge Ingraham, in a dissenting - opinion, in Scott v. Central R. R. & B. Co. (52 Barb. 45), said that the reasonable construction of the case of Ehle v. Chittenango Bank (24 N. Y. 548), was, that the corporation might divide “any specified property, but, when it made a dividend of profits or surplus, it must be made payable in money.” He here clearly recognizes the absolute power of disposition by a shareholder over his part of the dividend.
It is familiar that when a dividend is declared it becomes a debt due from the corporation to the individual stockholder (King v. Patterson R. R. Co., 5 Dutch. 82, 504). Shares are equitable estates which entitle holders to share in the income of the capital (People ex rel. Bank of Commonwealth v. Commissioners of Taxes and Assessments, 23 N. Y. 192, 220).
A share of the capital stock is the right to partake, according to the amount put into the fund, of the surplus profits of the corporation (Burrall v. Bushwick R. R. Co., 75 N. Y. 211,216). Whatever may be the nature of the dividend, it is manifest that each shareholder’s part of it is his individually. He has full control of it. He cannot be compelled to reinvest in the capital. By no process can individual shares of earnings be represented by capital, unless with the consent and agreement of the individual. And the substance of what was said by Judge Ingraham is, that if a dividend is properly made, and part of it is payable to the shareholder, he may invest it in the capital stock if he *427 please, and a general provision of the directors for that being done by all the shareholders that chose to accede to the arrangement would be objectionable only in the matter of the form of payment and the return to the company, and such an obligation would have no substance. Such a disposition' of the capital, to be valid, must necessarily provide that the part of the dividend to be paid to the shareholders, and then returned to the corporation, for shares, must be actually equal in value to what the officers are bound to obtain for the stock, as it has been before observed.. It may here be specifically stated that dividends cannot be made so as to encroach upon capital. They must be made from the surplus profits arising from the business of the corporation (1 R. S. 601, § 2 [6th ed. vol. 2, p. 398]; Stringer’s case, L. R. 4 Ch. 475). On the proofs it would seem that it was the intention of the directors to execute the agreement as to the $15,526,590 of new stock without the mediation of the declaration of a dividend. The affidavit of the president, avers u that the money thus expended for new property, not including any repairs or replacements, belonged to the stockholders of the Western Union Telegraph Company, and in making a new business arrangement by which new partners were being taken in, the officers of the company were advised that it was their duty, as well as within their powers, to make the issue of $15,256,000, referred to in said agreement, to their stockholders, to represent their money already paid out and expended.” The moneys already paid out and expended are not in possession of the corporation, to be divided. The property bought with the money it is not proposed to divide, and it is in great part of a nature that prevents its being the subject of a dividend. It is not proposed to make, upon the basis of the property, a dividend payable in money. Therefore the arrangement would result simply in an issuing of shares with *428 out the corporation receiving new capital. But if we suppose that the directors should proceed to declare, upon the basis of the former investments, a dividend, it must be made out of surplus profits. These surplus profits must exist in prcesenti. Surplus profits that have once existed, but that no longer exist, cannot be the basis of a dividend. For instance, a corporation has invested earnings in a security that has become of no value. There remain no profits. The corporation cannot replace their vanished earnings by paying out capital. Therefore it is incompetent, when investment of earnings have been made, to declare a dividend equal in amount to the past invested earnings, simply on the ground that there has been in the past such an amount of earnings.
In the present case it appears presumptively, if not conclusively, that the present value of the investment of the past earnings cannot be equal to the. amount of the nominal value of the stock proposed to be divided. Eight million dollars of the earnings were invested in construction of new lines, erection of poles, wires, patents, &c. These investments began in 1865. By the laws of nature the wires and the rest have been worn in part, and some wholly used up. If they have increased the present value of the rest of the property, that has gone into the capital as such.
There has been no exercise of the discretion and judgment of the directors as to what is the present value of these investments or of the other part of the investment, namely: the stock in other telegraph companies and the real estate. The parties in interest are entitled to the due exercise of this discretion, and, should a dividend be declared, the manner in which it shall be used and enjoyed is under the control of the shareholders individually.
I am therefore of the opinion that the directors have not the power to distribute the proposed increase *429 of the $15,000,000 of capital stock in the manner provided by the agreement.
First, because it attempts to turn earnings to which at their true value the individual shareholders are entitled, subject to the discretion of the directors as to the proportion of earnings it may be best to divide, into capital stock which the corporation has no power to compel the shareholders to receive. Secondly, because, upon the present facts, an exchange of the interest of the shareholders, individually or in the aggregate, in the investments of past earnings for the proposed shares, would be for less than the nominal value of the proposed capital.
It is argued that the event of the execution of the agreement will not injure the plaintiff or the comparatively small amount of shares he represents. This does not seem to appreciate the exact situation of the plaintiff. No one has any power or right to ask for his reason in not exchanging his right to the part profit for capital. That interest is his own. He may think it sufficient that he believes that if the value of the interest is not equal to the nominal value of the shares he receives, he will remain liable for one-quarter of the difference. And, if the others take the stock in relinquishment of their individual interests, there will result a diversion from his old shares to their new shares of a proportion of the profits to which, as shareholder, he is entitled, and, beyond that, he will not have the benefit of a proper increase of the capital within the intent of the statute.
Such part of the injunction as refers to the distribution of $15,526,590 of the increase of the capital stock should be continued until judgment in the action. The motion in other respects is denied.