MYRA A. WHEELER, Respondent, v. THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Appellant.

*Policy of insurance — insanity of assured, does not excuse non-payment of premiums — application for paid-up policy, must be made in life-time of assured.*

October 28, 1869, defendant issued a policy of insurance upon the life of J. G. Vose, who on the 4th of November, 1872, assigned it to his children, covenanting to pay the premiums and keep it in force. Before the payment of the premiums due in 1873, Vose became insane, and so continued until his death on March 17, 1874. The premium falling due on October 28, 1873, was not paid. On December 10, 1875, the guardian of the children assigned the policy and all rights of action thereunder to the plaintiff. To excuse the failure to pay the premium falling due October 28, 1873, the complaint alleged, " that previous to the last-mentioned day the said John G. Vose became and was, by the visitation and act of God, insane, and was consequently unable to, and did not, pay the premium which was due on said last-mentioned day on said policy, and on the policy hereinafter mentioned, although he was possessed of money sufficient to pay the same of his own, and of and belonging to his said children, but he was bereft of reason, and in consequence thereof did not know or remember that said premium was then due, nor that he had agreed to pay the same."

*Held,* that the facts alleged did not excuse the failure to pay the premium, and that a demurrer to the complaint should be sustained.

The policy provided "that if, after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of any subsequent premium when due; then, notwithstanding such default, this company will grant a "paid-up policy" (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to and received by this company, and application made for such "paid-up policy" within one year after default in the payment of premium hereon shall first be made."

*Held,* that the application for a paid-up policy must be made by the assured during his life, and could not be made after his death, by the then owner of the policy. (Daniels, J., dissenting.)

Appeal by the defendant from an order of the Special Term overruling a demurrer to the complaint.

The action was brought upon policies of insurance issued by the defendant upon the life of John G. Vose, deceased. The first count in the complaint set out the issuing of a policy for $20,000 to him on October 28, 1869; that on or about the 4th day of November, 1872, for a good and valuable consideration, the said John G. Vose sold, assigned and transferred the said

policy of insurance and all the moneys to become payable thereunder, unto his children, Flora L. Vose, Raymond H. Vose, Myra H. Vose, and Louise G. Vose, by an instrument in writing indorsed upon the said policy; that the said John G. Vose paid to the defendant the annual premiums falling due in the years 1870, 1871 and 1872 respectively; that on about the 1st day of January, 1873, the said defendant declared a dividend out of its surplus earnings and receipts for the preceding year, payable to its several policy-holders, and that the amount of such dividend, payable to the said John G. Vose, or his assigns, in respect of the said policy and of the policy hereinafter mentioned, was then the sum of about $210; that the said defendants did not pay the same to said John G. Vose or his assigns but retained the same, and the said dividend was in its possession on the 28th day of October, 1873; that the said John G. Vose, at the time of said assignment and up to the time of his death, was the general guardian of his said children, and had been duly appointed as such by the Orphan's court of the county of Essex, in the State of New Jersey, in which county he and they resided at the time of such appointment; that previous to said last-mentioned day the said John G. Vose became and was, by the visitation and act of God, insane, and was consequently unable to, and did not, pay the premium which became due on said last-mentioned day on said policy and on the policy hereinafter mentioned, although he was possessed of money sufficient to pay the same, both of his own and of and belonging to his said children, but he was bereft of reason, and in consequence thereof did not know nor remember that said premium was then due, nor that he had agreed to pay the same; that the said defendant did not, at the last-mentioned time, nor at any time until after the death of the said John G. Vose, claim nor insist that any forfeiture of said policy, nor of the policy hereinafter mentioned, had been caused by the aforesaid omission, but retained the said dividend in its possession, which, by the terms of said policy and by the agreement between the said John G. Vose and the said defendant, was applicable to the payment of the premium falling due October 28, 1873; that thereafter, and on or about the 17th of March, 1874, the said John G. Vose departed this life at Atlantic City, in the State of

New Jersey, leaving the said policy of insurance in force and effect, and that immediately thereupon his said children became entitled to the said sum of $20,000, so insured as aforesaid, according to the terms of the said policy, and that they had an interest therein to the amount thereof, as and for so much money of their deceased mother in his hands, and also as his children, who were dependant upon him for their support and maintenance ; that thereafter, and on or about the 10th of October, 1874, at the office of the defendant, in the city of Hartford, due notice and satisfactory evidence of the death of the said John G. Vose and of the appointment and authority of John Van Vechten as their guardian, hereinafter mentioned, was given to and served upon the defendant and payment of the said sum so insured under said policy to the said children was demanded ; but the defendant then and there refused to pay the same or any part thereof; that when such proofs of loss were presented to the defendant the said policy was transmitted to and received by the said defendant, but it refused to grant a paid-up policy for such amount as the present value of the policy, on the 28th day of October, 1873, would purchase as a single premium, or to pay such amount to said John Van Vechten as general guardian of said children, and also refused to pay the amount of insurance to which said dividend, as an annual payment made on the 28th day of October, 1873, would have entitled the said John G. Vose for a year from that day; that said John G. Vose and his said children, at the time of his death, were, and his said children have ever since been, residents of Orange, in the county of Essex and State of New Jersey, and that thereafter, and on or about the 20th day of April, 1874, John Van Vechten, of said Orange, was duly appointed general guardian of the said children by an order duly made by the Orphans' court of the said county of Essex, to which court, by the laws of New Jersey, the appointment of general guardians of the estates of infants rightly belonged; and the said John Van Vechten was also duly appointed general guardian of the said infants by an order duly made by the surrogate of the city and county of New York, on the 25th day of April, A. D., 1874, and as such had full power to dispose of the estate of said infants; and that the said John Van Vechten, as such general guardian, by an instru-

ment in writing, under his hand and seal, assigned the said policy and the policy hereinafter mentioned, and the moneys due thereon, and all causes of action arising thereupon, and all their causes of action against the defendant to this plaintiff on the 10th day of December, 1875. The second count was similar to the first.

The policy provided, among other things, that this policy shall not take effect until the advance premium hereon shall have been actually paid during the lifetime of the insured, and that if any subsequent premium on this policy be not paid when due, then this policy shall cease and determine (except as hereinafter provided), and this company shall not be liable for the payment of the sum insured herein nor of any part thereof, and that no premium on this policy shall be considered as paid, unless a receipt shall be given therefor, signed by the president or secretary of the company ; that if, after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of any subsequent premium when due, then, notwithstanding such default, this company will grant "a paid-up policy" (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to and received by this company, and application made for such " paid-up policy," within one year after default in the payment of premium hereon, shall first be made.

*W. A. Beach*, for the appellant.

*Everett P. Wheeler*, for the respondent.

Ingalls, J. :

This action is brought upon a policy issued by the defendant October 28, 1869, insuring the life of John E. Vose. On the 4th of November, 1872, the policy was assigned by Vose to his four children, who were then infants, and for whom he was appointed guardian. Vose died March 17, 1874, and John Van Vechten was, on the 20th day of April, 1874, appointed general guardian for said infants. On the 10th day of December, 1875, Van Vechten, as such guardian, assigned such policy, and all rights of action under the same, to the plaintiff. The complaint does

not state that the plaintiff is related to the children of said Vose, nor upon what terms she became the owner of said policy. Such statements are probably unnecessary, so far at least as the strict legal rights of the parties are concerned. By the terms of the policy a premium became payable on the 28th day of October, 1873, which was not paid. The policy contains the following condition : " And that if any subsequent premium on this policy be not paid when due, then this policy *shall cease and determine and this company shall not be liable for the payment of the sum insured herein, or any part thereof.*"

The complaint alleges, as an excuse for such failure to pay, " that previous to said last-mentioned day the said John G. Vose became and was, by the visitation and act of God, insane, and was consequently unable to, and did not, pay the premium which became due on said last-mentioned day on said policy, and on the policy hereinafter mentioned, although he was possessed of money sufficient to pay the same of his own and of and belonging to his said children ; but he was bereft of reason, and in consequence thereof did not know or remember that said premium was then due, nor that he had agreed to pay the same." By demurring the defendant admits the truth of the facts, which are material and well pleaded in the complaint. It must be assumed that the parties to this contract of insurance entered into the same deliberately, and with a full knowledge of the terms and conditions thereof ; and the obligations were created by express agreement, and not imposed by operation of law. This distinction is important in determining the rights of the parties to such contract. When the law creates the duty or charge, it more freely excuses a failure to perform than when the party expressly binds himself by contract. (*Harmony* v. *Bingham*, 12 N. Y., 99.) EDWARDS, J. (p. 107), remarks : " It is well-settled that where the law creates a duty or charge, and the party is disabled from performing it, without any default in himself, and has no remedy over, then the law will excuse him ; but where the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident or delay by inevitable necessity, because he might have provided against it by contract. This rule has been uniformly followed, and that, too, even in cases

in which its application has been considered by the court as attended with great hardship." In the same case Judge RUGGLES (p. 115,) says : " It is a well-settled rule of law that where a party, by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies and exempt himself from responsibility in certain events ; and in such a case, therefore — that is, in the instance of an absolute and general contract — the performance is not excused by an *inevitable accident or other contingency, although not foreseen by, or within the control of the party.*" The same doctrine is again asserted in *Tompkins* v. *Dudley* (25 N. Y., 275). In that case reference is made to *The School Trustees of Trenton* v. *Bennett* (3 Dutcher [N. J.], 514), in which the court say : " No rule of law is more firmly established by a long train of decisions than this, that when a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by contract." " No matter how harsh or apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundation in good sense and inflexible honesty." (See also Story on Bailments, § 36.) This rule of law is applied with greater rigor to conditions incorporated in policies of insurance than to covenants in ordinary contracts. In *Roehner* v. *Knickerbocker L. Ins. Co.* (63 N. Y., 167), Judge FOLGER remarks : " The contract of life insurance is *sui generis ;* it is one-sided. *By a strict observance of the conditions of it, the insured may hold* the insurers to their contract, while they have not the power or the right to compel him to remain in contract relations with them longer than he chooses. Thus it differs widely from a lease. For this reason the clauses of forfeiture in policies of life insurance have been construed literally, *and, on breach of condition, the policies have been held avoided in favor of the insurers, without demand or other notice of election on their part.*" Again, on p. 164, " the payment *is a condition precedent which must be kept* or the policy falls. It is a rule of the common law that if the terms of the contract violate no law or public policy, are sustained by sufficient consideration, and have been fairly entered

into, a strict and exact compliance with them may be insisted upon." In *Sparks* v. *The Liverpool Water-works Company* (13 Ves., 428 [Sum. ed.]), the Master of the Rolls, says : " This bill is founded in forfeiture, and upon the ground that the plaintiff did not consider himself as a partner, and offering compensation and praying to be relieved from the forfeiture. The parties might contract upon any terms they thought fit, and might impose terms as arbitrary as they pleased. It is essential to such transactions. This struck me as not like the case of individuals. If this species of equity is open to the parties engaged in these undertakings they could not be carried on. It is essential that the money should be paid, and that they should know what is their situation." " *The party making default is no longer a member*, but if a party can in equity enter into a discussion of the circumstances, each may bring his suit." " Why is not this equity open to contractors for the government loans ? Why may not they come here to be relieved when they have failed in making their deposits, and if they could have that relief how could government go on ? It would be just as difficult for these undertakings to go on." This reasoning applies to life insurance ; the premiums are relied upon to furnish capital, with which to conduct the business, and meet obligations. Prompt payment thereof is indispensable to the existence of such companies. Every person who accepts a policy is presumed to understand the nature of the obligation which he assumes with the company, and the necessity of strict performance. Insurance companies should be held to a strict accountability, and required to perform their contracts, and those who accept policies should be subjected to the same rule in regard to their engagements. When a party has deliberately entered into such an agreement, and bound himself by covenant or condition, and no fraud or imposition has been practiced upon him, he should certainly be required to perform in a case like this ; and a court of equity should be reluctant indeed, to lend its aid, and relieve a party from the consequences of a forfeiture, against which he might have provided by his contract. While such rule may operate harshly in a particular case, it will be salutary in its general effect. If it is understood that contracts will be rigorously inforced by the courts, they will be entered into with

greater caution, and more faithfully performed. The condition in the policy before stated must be regarded as a condition precedent; upon its strict performance depended the life of the policy, and when a failure to pay a premium occurred, the obligation of the company to pay the sum specified in the policy ceased, and that too without any declaration of the company that it regarded the same forfeited. (*Roehner* v. *Knickerbocker L. Ins. Co., supra; Evans* v. *The United States Life Ins. Co.,* 64 N. Y., 308.) In that case Judge Earle says : " The policy, therefore, became absolutely void after July 1, 1870. It was unnecessary for defendant to make any election, or to do anything else to render it void. *It became dead by its own terms and could never again have any vitality, except by some sufficient act of the defendant* reclothing it with life." In order to invoke successfully the equity powers of the court to relieve a party against forfeiture, even in an ordinary contract, where such party who made the contract has been stricken by disease, or prostrated by inevitable accident or casualty, so as to be unable to perform his agreement, it is not sufficient to show that the act or duty required to be performed was difficult ; it must be shown *to be impossible of performance without the personal intervention of such party.* (*Evans* v. *The U. S. Life Ins. Co.,* 64 N. Y., 305; *Beebe* v. *Johnson,* 19 Wend., 500.) In the last case the court (p. 502) say: "To bring the case within the rule of dispensation it must appear that the thing to be done cannot by any means be accomplished, for if it is only improbable or out of the power of the obligor, *it is not in law deemed impossible.*" (Story on Bailments, § 36 and note; Story's Equity Juris., § 1303.) The author remarks, " *so if the thing is physically possible, but not physically possible for the party,* still it will be binding upon him if fairly made, for he should have weighed his own ability and strength to do it." In *Howell* v. *The Knickerbocker L. Ins. Co.* (44 N. Y., 281), Judge Gray says : " The payment of the premium was an act which could have been performed by any other person than the plaintiff's husband ; its payment did not necessarily depend upon his continued capacity or existence ; and hence, although he was shortly prior to the expiration of the policy, when about to pay the premium, *rendered incapable by the act of God,* she is without the rule that relieves

a party from the consequences of an omission to do an act, *rendered impossible* by omnipotent power." Regarding the strict requirements of the law in reference to the performance of *such a contract*, can it be reasonably said, in view of the allegations of the complaint, that the premium could not have been paid by any other person than Mr. Vose ? · It is not sufficient that he was the proper person to make payment, nor that he had money with which he could have paid it, but for the insanity. Any other person might have paid the premium, and thereby bound the company and prevented the forfeiture. The complaint does not even allege that the children were of such tender years, at the time, as to even raise a presumption that they did not possess a degree of intelligence sufficient to understand their rights, and to have performed this act ; nor that the existence of the policy and the necessity of paying the premium was not known to other persons, who could and would have paid the same upon request. The complaint does not even allege, in so many words, that Vose would have paid the premium if he had been sane. While pleadings are to receive a liberal construction, since the adoption of the Code, yet a cause of action must be stated. In this case the plaintiff was confronted at the threshold by the forfeiture, and was required to state facts which excused the failure to pay the premium, showing that the same could not possibly have been paid by any person other than Vose. This may seem a severe rule, but we are dealing with a forfeiture under a contract where, as we have seen, the most stringent rule of construction obtains. Again, regarding the nature of this contract, and the adjudications which bear upon the question, whether the insanity of the insured will excuse the performance of a such a condition as is contained in this policy, we are of the opinion that the complaint does not allege facts which would justify a court of equity in granting relief against such forfeiture. (*Howell* v. *Knickerbocker L. Ins. Co.; Evans* v. *United States L. Ins. Co.; Roehner* v. *Knickerbocker L. Ins. Co.*) All before referred to. Reference has been made to the effect of the war upon such contracts, and the cases (*Cohen* v. *N. Y. M. L. Ins. Co.*, 50 N. Y., 610; *Sands* v. *N. Y. Life Ins. Co.*, 50 id., 626) among others have been cited. It is held that the war suspended such contracts, and the remedies to enforce the same ; such result

arose necessarily from the antagonism which existed between the citizens of the various sections of the country, and the impracticability of inforcing or performing the conditions of such contracts; such restriction operated, not only upon the contract, but upon the parties and the courts. This doctrine rests upon the ground of public policy, to prevent an enemy from deriving strength from commercial intercourse. We do not think that class of cases lends support to the plaintiff's case by analogy or otherwise. In the case of *Sands* v. *N. Y. L. Ins. Co.* (*supra*), it was suggested that an act of providence would not dispense with strict performance of a condition in a policy of insurance. Judge Peckham did not deny the soundness of the proposition, but remarked, " without stopping to question this position, it is clear that war in this respect, then, can accomplish what cannot be done otherwise. War extends the statute of limitation." This case certainly does not support the plaintiff's case upon this precise question. In *Wilkinson* v. *First National Fire Ins. Company* (9 Hun, 523), it is held to be no sufficient answer to the statute of limitations that the party was restrained by an injunction, and this decision has recently been affirmed by the Court of Appeals. Certainly the decisions of the courts do not show a tendency to relax the rule in regard to the strict performance of contracts. To obtain relief in a court of equity, the case must be brought within some acknowledged head of equity jurisdiction. It is not sufficient to show that relief cannot be obtained by the strict rules of the common law, and that the party will be subjected to great loss, unless a court of equity grants relief. If it were once established that a court of equity would interpose in all cases of extreme hardship, parties could not rely upon their contracts, and utter confusion would be the result. The complaint does not show but that the plaintiff purchased the policy, and the right of action, for a nominal consideration, and is engaged in a speculation. While this remark may not apply to her right of recovery at law, it is certainly an important consideration when a court of equity is asked to relieve against the effect of this forfeiture. From the frequency with which such questions arise, and no decision being discovered or produced, justifying the granting of the relief necessary to sustain the plaintiff's case, we

may introduce here the remark of the Lord Chancellor in *Peachy* v. *The Duke of Somerset* (1 Strange, 452) : "This is a point of so great consequence that if relief could be given in this court, it is strange it should not have been found out long ago."

We are satisfied that the complaint cannot be sustained, upon the ground that it alleges a cause of action under the following provision of the policy : Sixth. "That if after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of any subsequent premium when due, then, notwithstanding such default, this company will grant a "paid-up policy (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to and received by this company, and application made for such 'paid-up policy' within one year after default, in the payment of premium hereon, shall first be made."

The pleading was framed upon no such theory. Two distinct causes of action are stated, in terms so unmistakable, that neither can be construed into the statement of a cause of action within the said provision. It is not even alleged that a demand was made of the defendant for a paid-up policy, nor is any such relief claimed in the complaint. Indeed, the entire pleading negatives the idea that any such cause of action or relief was contemplated by the pleader. While pleadings, under the Code, are to be liberally construed, yet it is not allowable to glean from an entire pleading one fact here, and another there, and then group them in such manner that a cause of action may possibly be spelled out, which did not enter the mind of the pleader when he framed the pleading, and which is also inconsistent with the entire scope of the pleading, and the relief demanded thereby. It would in effect be substituting a new cause of action. (*Leeder* v. *Sayre*, 70 N. Y., 181.) Independent of this question of pleading, there arises, inherent in the contract itself, an obstacle to the plaintiff's right to recover upon any such grounds when applied to the facts alleged. The agreement provides, in substance, that after the payment of two or more annual premiums, the policy may be transmitted to the company, and an application made for a paid-up policy, at any time within one year after default shall first be made in the payment

of a premium; and the company will grant a paid-up policy. There is no pretence that any such application was made by John E. Vose, in his lifetime, or by any other person in his behalf; or that of any other party who was interested. Consequently no right of action accrued against the defendant prior to the death of Vose. The contract of the defendant was to grant a paid-up policy, and there is no agreement to pay money as an equivalent therefor. Obviously the policy was to be issued to Vose, or at least to depend upon his life, and when he died such life ceased to be a subject for insurance, and surely no other could be substituted. From the nature of the contract, and the purpose sought thereby, the conclusion seems inevitable that the agreement in that respect was personal to John E. Vose, as there is nothing which indicates that a continuing covenant was intended. To whom could the policy issue? Upon the termination of what life must payment depend? With whom rested the right to elect whether the original policy should be surrendered, and a paid-up policy accepted in its stead? It seems clear to my mind that it was intended by the parties that the contract in this particular should be performed in the lifetime of Vose, and that his death had the effect to terminate all right to a paid-up policy, or any equivalent therefor in money. Vose and his assignees relied upon the original policies, and a recovery is sought by the plaintiff by virtue thereof. Such are the causes of action stated in the complaint, and they are inconsistent with the pretence that any other cause of action is relied upon. The right to a paid-up policy depended upon a surrender of the original policies, as both could not be claimed or asserted with any semblance of right. We fail to discover any substantial ground, legal or equitable, which would justify a recovery by the plaintiff upon any such pretended cause of action. As it is quite probable that a cause of so much importance, and involving questions so novel, will be presented to the Court of Appeals for final adjudication, we deem it best for all the parties that all the questions of law raised by the demurrer should be passed upon and the rights of the parties declared, so far at least as the law which should govern the case is concerned.

The judgment of the special term must be reversed with costs;

but with leave to the plaintiff to amend her complaint within twenty days, upon payment of the costs of the demurrer to the defendant.

BARRETT, J., concurred.

DANIELS, J., dissenting:

This action has been brought upon two policies of insurance, issued by the defendant to John G. Vose upon his own life, on the 28th day of October, 1869. He assigned these policies to his children on the 4th of November, 1872, and in the assignments covenanted to pay the annual premiums upon them out of their moneys in his hands and to keep the insurance in force. At that time, and up to the period of his own decease, he was the general guardian of these children, who were minors, and the premiums on the policies were paid by him for the years 1870, 1871 and 1872, besides the sums required to be paid when the policies were issued. Before the premiums became due for the year 1873, he became insane, and continued to be so until the 17th of March, 1874, when he departed this life. When he became insane he had moneys in his hands belonging to his children, from which these premiums might have been paid; but they were not paid because of his insanity.

To the complaint, alleging these and other facts, the defendant demurred, on the ground that they were insufficient to constitute a cause of action. That was overruled by the Special Term, and in support of the appeal taken from the order, the point most elaborately argued was, whether there had been a forfeiture of the policies because of the non-payment of the annual premiums, when that resulted from the existence of this state of insanity, and it has been very ably and thoroughly considered in an opinion already written by the learned justice presiding on the argument of the appeal; but whether the position there taken and maintained should be adopted in the disposition of the case will not now be discussed, for the demurrer can be properly disposed of without considering that subject.

These policies provided for other liability on the part of the defendants, besides that for payment of the amount mentioned in

them, and for which they were primarily obtained, and the facts exhibiting these obligations have been set forth and averred in the complaint.    One of them was the obligation to make and declare dividends out of its surplus earnings, in which the insured was entitled to participate; and in conformity to it the complaint shows such a dividend to have been declared to the extent of the sum of $210 in favor of the assured; but as it was not sufficient to meet the premium which afterwards matured, it was not obliged and does not seem to have credited the amount on this policy.    Still no right of action for its recovery exists under the circumstances stated, for no demand of the amount has ever been made upon the defendant, and such a demand seems to be necessary before an action for the recovery of the dividend can be sustained.    (*Scott* v. *Central R. R. Co.*, 52 Barb., 45.)    But as to another of these obligations, the plaintiff's case stands in a very different condition; that was created and stated in the sixth condition to which the policies were subjected, and by that it was provided and declared:  " Sixth.  That if after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default, in the payment of any subsequent premium when due, then, notwithstanding such default, this company will grant a ' paid-up policy ' (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to and received by this company, and application made for such ' paid-up policy ' within one year after default in the payment of premium hereon shall first be made."

Three of the annual premiums were shown by the complaint to have been paid upon each of these policies, and by reason of that fact this provision had become operative in favor of the assured and his assignees, under the terms of the assignments made to them, for all moneys becoming payable under the policies were assigned, as well as the policies themselves ; and it has been averred that at the time when the proofs of death were presented to the defendant, which was on or about the 10th day of October, 1874, the policy for the sum of $20,000 was transmitted to and received by the defendant, but it refused to grant a paid-up policy for the amount of the value of the policy as a

single premium on the 28th day of October, 1873, the day when the default was made in the payment of the annual premium. These facts constituted a compliance with what the defendant had prescribed to entitle the assured to a paid-up policy; and at that time they were the assignees of the policy. Their application was made within the year after the default, and in the mode described by the defendant, and it refused to perform this obligation, and that was sufficient to constitute a cause of action in the case.

For the purpose of justifying the defendant in its refusal, it has been urged that as the person whose life had been insured was dead at the time of this application, the condition itself could not be complied with by issuing a paid-up policy. But that was not a contingency to which the performance of this obligation had been subjected. It had been rendered dependent, on the contrary, on two circumstances only. They were that two or more annual premiums should be paid, and that the application should be made within one year after the first default, and both were shown to have been complied with in the case.

As a continuing insurance, the policy applied for would truly be inoperative; but the essence of the obligation was not of that nature. It was that the company would place itself in the position in which it would be obliged to pay the value of the paid-up policy for premiums received by it, and that it was shown to have refused to do.

The case, in this respect, is quite analogous to those in which insurance companies have been held liable, after losses have arisen on their contracts or those of their agents, to make and issue policies never made out or delivered. The fact that the policy could not afterwards be operative as an existing insurance was not allowed to exonerate the company from the effect of its obligation; but it was required to pay the loss the same as though a formal policy had been executed to include it. These authorities have been cited in the case of *Post* v. *Ætna Ins. Co.* (43 Barb., 351, 362–364), and the same principle may well be applied to the disposition of this case.

The practical object of this condition was to place the assured in a position in which substantial benefit should be derived from

the premiums paid, even though that should be followed by a subsequent default. It was to secure the same advantage as if an amount of money, equal to the value of the policy at the time, were paid over for a paid-up policy. This was the spirit and intent, as well as the import, of the language used in the condition, and no such insuperable obstacle stood in the way of its performance as should deprive the assured of its benefit. The company had assumed this obligation and it could have been literally performed by it, and the effect of that performance would be to entitle the assignees to demand and receive the amount required to be paid to discharge the paid-up policy. Its refusal to perform rendered it liable in damages for an equivalent amount, and that the present plaintiff has, by the facts stated, shown herself entitled to in this action. That is a good cause of action, although not very artistically set forth. In many other respects more precision should have been given to the allegations made; but while they may not be free from other objections, they are sufficient against the defendant's demurrer, for the facts stated do show the existence of this cause of action. The case is an important one, and all the facts should have been more clearly and properly pleaded; but as it now stands the appeal from the order cannot be sustained.

The order accordingly should be affirmed; but as the cause of action upon which that result has been reached has not been separately set forth, it should be without costs of this appeal.

Judgment reversed.