## JAMES M. HAGAR *vs.* UNION NATIONAL BANK.

*Dividends—bank has lien on ; demand therefor premature while lien continues.*

A bank has the right to hold a cash dividend as pledged for the indebtment of the shareholder to the bank.

A bank had sued an overdue note of a stockholder, discounted by the bank, and attached his shares. During the pendency of this action, the stockholder demanded payment of the dividends declared upon the attached shares, which was refused. He subsequently settled that suit and then, without renewing his demand, brought the present action for his dividends; *held*, that it could not be maintained.

ON FACTS AGREED.

ASSUMPSIT to recover dividends declared by the defendants upon forty-five shares of their capital stock, owned by the plaintiff on the first day of January, 1872, and ever since; and, during all that time, standing in his name upon the books of the bank.

July 1, 1872, a semi-annual dividend of three per cent. was declared, and the plaintiff demanded the $135 thus accruing upon his

shares, on the thirteenth day of August, 1872.   Upon the first day of January, 1873, a dividend of four and a half per cent. was declared; and, on the second day of April, 1873, Mr. Hagar demanded his $202.50.   Neither of these demands was complied with, because the bank had sued Mr. Hagar upon the twenty-first day of June, 1872, upon two notes signed by him, one for $1000, due May 21, 1872, and the other for $1500, due June 19, 1872, and attached the plaintiff's stock, if the officer's return and notice were sufficient to constitute an attachment.   This attachment was made by the officer filing with the cashier an attested copy of the writ, with an attested copy of his return of the attachment of said forty-five shares thereon.

The action of the bank against Hagar was returnable to and was entered at the September term of the superior court for Cumberland county (the bank being established at Brunswick) and was thence continued from term to term, till the May term, 1873, when the plaintiff paid the notes, July 10, 1873, and the action was, on the same day, entered "neither party."   Subsequently to the dates before given the plaintiff never made any other demand for the dividends aforesaid upon his forty-five shares before bringing this present action.   It was conceded that the plaintiff could show that the dividend declared July 1, 1872, was mostly earned before the attachment of the shares June 21, 1872, if that fact was legally admissible; and, if allowable, he could also show that the writ, though dated June 25, 1873, was in fact made July 14, 1873, and ante-dated so as not to interfere with the July dividend of 1873.   Judgment to be entered according to law upon these facts.

*J. W. Spaulding*, for the plaintiff.

Though by a sale of stock, dividends subsequently declared pass to the purchaser, without reference to when they were earned, *March* v. *Eastern R. R. Co.*, 43 N. H., 515, an attachment of shares only takes that upon which the statute gives a lien, namely, the accrued (i. e., already earned) dividends.   R. S., c. 81, § 25, and c. 84, § 15.

Certainly, those subsequently accruing do not belong to the creditor, whose suit may be settled, as that against Capt. Hagar was. *Hixon* v. *Schooley*, 2 Dutcher, (N. J.,) 461.

No demand necessary to maintain suit for dividends. The only effect of demand is upon the right to claim interest. See opinion by Chase, C. J., in *Keppel* v. *Petersburg*, in 3 Am. Law. Rev., 389 ; *Rich* v. *Jones*, 9 Cush., 329.

The writ was really made after the dissolution of the attachment; and we are authorized to prove this fact, notwithstanding its date. R. S., c. 81, § 91; *Johnson* v. *Farwell*, 7 Maine, 373 ; *Davis* v. *Drenkle*, 9 N. H., 545.

At all events, a valid, existing attachment could only be plead in abatement. 2 Dutcher, 461. There · was no valid attachment. Only necessity, which did not exist here, could justify the bank in taking its own shares. National currency act of 1864, 13 U. S. Stats. at Large, c. 106, § 35. This necessity they must show, since they assume it as the basis of action.

*J. H. Drummond*, for the defendants.

The bank had a right to retain the dividends of a stockholder indebted to them upon overdue paper. Ang. & Ames, on Corps., § 569 ; *Rogers* v. *Huntingdon Bank*, 12 S. & R., 77.

The dividends were held by the attachment while that continued, and when the demand was made. Dividends are only payable on demand, at the bank. None was made there for these dividends, after the attachment of the shares was dissolved.

VIRGIN, J. There are two fatal objections to the maintenance of this action :

I. A bank has the right to hold a cash dividend as pledged for the indebtment of the shareholder to the bank.

It has been expressly decided in the supreme court of the United States, that since the National Bank act of June 3, 1864, went into effect, neither by the act itself, nor by any by-law based upon any authorized provision in the "articles of association," can a national bank create a lien upon the shares of its stock-

holders for their indebtment to the bank. That such a lien is contrary to the whole policy of the act is manifested by the repeal of such a provision in the act of 1863, and inconsistent with the spirit of § 35 in the act of 1864. *Bank* v. *Lanier*, 11 Wall., 369; *Bullard* v. *Bank*, 18 Wall., 589. See also, *Evansville Nat. Bank* v. *Metropolitan Nat. Bank*, 10 Am. L. Reg. (N. S.), 774. To the same purport is *Bank of Louisville* v. *Bank of Newark*, decided by the Kentucky Court of Appeals, and reported in 7 Chicago Legal News, 70.

The rule has long prevailed in many jurisdictions that a corporation has no implied lien on the shares of its stockholder for debts due from him and cannot hold them against a purchaser or attaching creditor. *Sargent* v. *Franklin Ins. Co.*, 8 Pick., 90; *Mass. Iron Co.* v. *Hooper*, 7 Cush., 187; but that a bank deals with its stockholders in the same manner as it does with its general customers, taking the same security and not relying upon its stock. A different rule was adopted in relation to dividends declared. They were considered as so much money in the possession of the bank belonging to the stockholder, but which should be considered as pledged towards the payment of any just debt then due from him. *Bates* v. *N. Y. Ins. Co.*, 3 Johns. Cas., 238. This rule was considered a "reasonable one," and was adopted by the court in *Sargent* v. *Franklin Ins. Co.*, *supra*. We fail to perceive any real objection to such a rule. It is not inconsistent with any provision in the bank act, and neither is it in conflict with any principle of public policy. It cannot affect the free sale and transfer of shares, for the dividend does not pass with the transfer of the share, being the property of him who is the shareholder when it is declared. So long, then, as the plaintiff's overdue notes remained unpaid, he could not recover the dividends declared upon his shares, because of this equitable lien.

And neither could he maintain an action therefor without a previous demand. *Scott* v. *Cent. R. R. Co.*, 52 Barb., 45. The law does not require a bank, after declaring its dividends, to hunt up and tender to its stockholders their respective dividends, in

order to avoid the liability of actions therefor. Dividends are usually declared payable at the banking-room, whither the owner may go and there on demand receive them—provided his indebtment to the bank does not contravene. To be available the demand should have been made when and where, the bank was bound to pay. If made while the money was considered as pledged for the indebtment of the demander, it would be as useless as if made before the dividends had been declared. As well might a mortgager of chattels demand them before he had discharged the debt secured thereby, and after payment bring his action without renewing his demand. In the case at bar the plaintiff, after dissolving the lien by payment of his notes, could doubtless have obtained the dividends by asking for them at the banking-room; but, for some reason, he chose to sue without any other demand; and we think his action was prematurely commenced. *Hagar* v. *Randall*, 62 Me., 439.

II. It had a special lien created by the attachment of his shares on June 21, 1872, which continued until July 10, 1873, when the attachment was dissolved.

The net profits of a bank remain the property of the bank and are inseparable and undistinguishable from it, and will pass by the name of stock by sale, bequest or levy, until by the resolution of the directors, they are separated and set apart as dividends. This almost necessarily results from the utter impracticability of ascertaining the real circumstances of the bank until the expiration of the full period for which they are declared; and when declared they become the property of the then stockholders. *Goodwin* v. *Hardy*, 57 Maine, 143 ; *March* v. *Eastern R. R. Co.*, 43 N. H., 515; *Foote*, appellant, 22 Pick., 299; *Granger* v. *Bassett*, 98 Mass., 469; *Minot* v. *Paine*, 99 Mass., 101.

Shares are a peculiar property, but are declared by all modern charters to be personal property. The title is a legal one, created and defined by law, and it may be transferred by contract, bequest or levy. The mode for securing a lien thereon and passing the title by levy, is expressly provided by our own statute, as follows :

"When the share or interest of any person in any incorporated company is attached on mesne process, an attested copy of the writ with a notice thereon of the attachment, signed by the officer, shall be left with the clerk, cashier or treasurer of the company ; and such attachment shall be a lien on such share or interest, and on all accruing dividends." R. S., c. 81, § 25.

The attachment was perfected in strict compliance with this provision. We can hardly conceive of a better "notice" of an attachment than an attested copy of the officer's return of the attachment, indorsed upon an attested copy of the writ. The attachment being valid, it created a lien on the shares "and on all accruing dividends," i. e., all dividends declared on such shares during the continuance of the attachment regardless of the time when the acquisitions out of which they are declared may have accrued. In perfect accord with this view, the statute further provides that "if such shares were attached in the suit in which the execution issued," the purchaser at the sale on execution "shall have all dividends which accrued after the attachment." R. S., c. 84, § 15.

The plaintiff invokes § 35 of the Act of Congress of 1864, (13 Stat. at Large, 102,) viz : "That no association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser nor holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith ;" and contends that this provision forbids the attachment by the bank of any shares of its own capital stock, "unless it shall be necessary to prevent loss," &c. We do not understand that the attachment or sale on execution of shares implies a purchasing or holding on the part of the creditor. Shares are personal ; and any person may purchase at the sale. If, like a levy on real estate, the title necessarily passed to the creditor, the construction contended for by the plaintiff would be much strengthened. But although, to use the language of Mr. Justice Davis, in *Bank* v. *Lanier*, supra., "so marked is the policy of Congress on this subject, that it does not allow a

bank to become the purchaser or holder of its shares at all, unless absolutely necessary to prevent loss on a debt," &c., and "that if the power were given to a bank to loan money on the security of its shares, it would imply a power to become the owner of those shares, and this Congress intended to guard against," we are not prepared to believe that Congress intended to require a bank to go out and accurately inform itself of the necessity before it can by the forms of law attach the shares of a stockholder for his debt due the bank and sell them to whomsoever may purchase.

If the defendant did have a lien on the shares by reason of the attachment, then the demand will not avail the plaintiff in the maintenance of this action. *Plaintiff nonsuit.*

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and DANFORTH, JJ., concurred.