[No. 13406. In Bank—January 28, 1895.]

# ALBERT V. BILLS, APPELLANT, *v.* SILVER KING MINING COMPANY ET AL., RESPONDENTS.

CORPORATIONS—STOCK HELD IN TRUST—DIVIDENDS—ESTATE OF DECEASED OWNER—DEMAND AND REFUSAL—STATUTE OF LIMITATIONS.—Where stock of a mining company was issued in the name of a trustee as the agent of another person, and the administratrix of the beneficial owner of the stock applied to the officers of the corporation for information as to the dividends upon the stock, who informed her that all dividends on the shares of stock had been paid to the trustee, and that no money was due or owing on account of any dividends declared during the lifetime of the beneficial owner, and the administratrix of the beneficial owner allowed the estate to be distributed and closed without reference to the dividends of the corporation, and without further demand for an inspection of its books or papers, or effort to discover whether it was true that the dividends had been paid to the trustee, the statute of limitations for a recovery of the dividends from the corporation on behalf of the distributees of the estate began to run from the time of the refusal of the corporation to pay any dividends to the administratrix, at which time the corporation put itself in a state of hostility to the estate of the deceased beneficiary with respect to any alleged obligation in the matter of the dividends, and no further demand or refusal was necessary to set the statute in motion.

ID.—DISCOVERY OF FRAUD—LACHES.—The statute of limitations for the recovery of dividends from a corporation cannot be avoided on the ground of fraud, in a case where the facts are sufficient to put a person of ordinary intelligence and prudence on inquiry as to the truth, and where there is gross laches in not making any effort to discover the real facts with respect to the dividends, which might have been discovered by the use of slight diligence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Henry P. Bowie*, and *Crittenden, Foote & Van Wyck*, and *James L. Crittenden*, for Appellant.

The causes of action alleged in the complaint are not barred by the statute of limitations, because the dividends were held in trust by the corporation and its officers as trustees for Reagan and his heirs until within about one year of the commencement of the action when the corporation first asserted a hostile claim to the dividends.

It is well settled that the directors of a corporation are trustees for the stockholders. (Green's Brice's Ultra Vires, 477; *Hoyle* v. *Plattsburgh etc. R. R. Co.*, 54 N. Y. 314, 328, 329; 13 Am. Rep. 595; Angell & Ames on Corporations, sec. 312; *Gray* v. *New York etc. Co.*, 3 Hun. 389, 390; *Koehler* v. *Black River etc. Co.*, 2 Black, 715, 721; *The York etc. Co.* v. *Hudson*, 19 Eng. Law & Eq. 261–65; *European etc. R. R. Co.* v. *Poor*, 59 Me. 278; *Drury* v. *Cross*, 7 Wall. 302; *Jackson* v. *Ludeling*, 21 Wall. 616, 624, 625; *Ashurst's Appeal*, 60 Pa. St. 291; Story on Agency, secs. 210, 211; *Richards* v. *New Hampshire Ins. Co.*, 43 N. H. 263–65; *Peabody* v. *Flint*, 6 Allen, 52–56; 2 Sugden on Vendors, 109 (London ed. 1824); *Michoud* v. *Girod*, 4 How. 554–59; *Cumberland Coal etc. Co.* v. *Parish*, 42 Md. 598, 605, 606 (1875), and cases cited; *Blake* v. *Buffalo etc. R. R. Co.*, 56 N. Y. 485, 491, and cases cited; *Ogden* v. *Murray*, 39 N. Y. 202–04; *Hodges* v. *New England Screw Co.*, 1 R. I. 312; 53 Am. Dec. 624, and cases cited; *Marshall* v. *Baltimore etc. R. R. Co.*, 16 How. 326, 327; *Butts* v. *Wood*, 38 Barb. 188, 189 (1862) and cases cited; *Scott* v. *De Peyster*, 1 Edw. Ch. 513, 542, 543; *Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch. 85; *Great Luxemburgh Ry. Co.* v. *Magnay*, 25 Beav. 586; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553, 571, 572, and cases cited; *Buell* v. *Buckingham*, 16 Iowa, 290; 85 Am. Dec. 516; *Hale* v. *Republican River Bridge Co.*, 8 Kan. 472; *Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 159, 180; *Taylor* v. *Chichester etc. Ry. Co.*, L. R. 2 Ex. 390 (1879); *Phosphate of Lime Co.* v. *Green*, L. R. 7 Com. P. 43; *Evans* v. *Smallcombe*, L. R. 3 H. L. 249; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553, 570; *Cumberland Coal etc. Co.* v. *Sherman*, 20 Md. 117, 121, 122; 1 Lead Cas. Eq. 260; 1 Perry on Trusts, 230, sec. 195; *Hoffman Steam Coal Co.* v. *Cumberland Coal etc. Co.*, 16 Md. 456; 77 Am. Dec. 311; *Charitable Corporation* v. *Sutton*, 2 Atk. 404; *Robinson* v. *Smith*, 3 Paige, 222; 24 Am. Dec. 212; *Gilman etc. R. R. Co* v. *Kelly*, 77 Ill. 426, 421–37; *Aberdeen Ry. Co.* v. *Blakie*, 1 Macq. 461; *San Diego* v. *San Diego etc. R. R. Co.*, 44 Cal. 106; *San Francisco etc. R. R. Co.* v. *Bee*, 48 Cal.

398; *Flint etc. Ry. Co.* v. *Dewey,* 14 Mich. 478; *Northern Pac. R. R. Co.* v. *Kindred,* 14 Fed. Rep. 77; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587; *Duncomb* v. *New York etc. R. R. Co.,* 84 N. Y. 190; *Gardner* v. *Ogden,* 22 N. Y. 327; 78 Am. Dec. 192; *Brewer* v. *Boston Theater,* 104 Mass. 378; *Ervin* v. *Oregon etc. R. R. Co.,* 22 Blatchf. 193; *Mason* v. *Harris,* L. R. 11 Ch. Div. 97; *Menier* v. *Hooper's Tel. Works,* L. R. 9 Ch. 350; *Goodin* v. *Cincinnati etc. Canal Co.,* 18 Ohio St. 169; 98 Am. Dec. 95; 2 Story's Equity Jurisprudence, sec. 1252; *Wood* v. *Dummer,* 3 Mason, 309; *Koehler* v. *Black River Falls Co.,* 2 Black, 715; *Guild* v. *Parker,* 43 N. J. L. 430; *Pearson* v. *Concord R. R. Corp.,* 62 N. H. 537; 13 Am. St. Rep. 590; *Gardner* v. *Butler,* 30 N. J. Eq. 702; *European etc. Ry. Co.* v. *Poor,* 59 Me. 277; *Paine* v. *Lake Erie etc. Ry. Co.,* 31 Ind. 283; *Abbott* v. *Hard Rubber Co.,* 33 Barb. 578; Thompson on Liability of Directors, 243.) After demand and refusal, and not before, an action can be maintained by a stockholder against the corporation for accrued dividends. (*Jones* v. *Terre Haute etc. R. R. Co.,* 57 N. Y. 205, 206; *Philadelphia etc. R. R. Co.* v. *Cowell,* 28 Pa. St. 329; 70 Am. Dec. 128; *State* v. *Baltimore etc. R. R. Co.,* 6 Gill 387, 388; *Le Roy* v. *Globe Ins. Co.,* 2 Edw. Ch. 657; *Scott* v. *Central etc. R. R. Co.,* 52 Barb. 69; *Hagar* v. *Union Nat. Bank,* 63 Me. 512, 513; *Hagar* v. *Randall,* 62 Me. 439.) A demand is necessary before the right of action accrues in cases of agents and factors and others acting in a representative capacity, and until such demand the statute of limitations does not begin to run. (*Clark* v. *Moody,* 17 Mass. 145; *Topham* v. *Bradick,* 1 Taunt. 572; *Cullings* v. *Benhings,* 12 Mod. 444; *Baird* v. *Walker,* 12 Barb. 294; *Sawyer* v. *Tappan,* 14 N. H. 352; *Hutchings* v. *Gilman,* 9 N. H. 360; *Taylor* v. *Bates,* 5 Cow. 379; *Paschall* v. *Hall,* 5 Jones Eq. 108; *Hays* v. *Stone,* 7 Hill, 128; *Krause* v. *Dorrance,* 10 Pa. St. 462; 51 Am. Dec. 496; *Baker* v. *Joseph,* 16 Cal. 173; *Green* v. *Williams,* 21 Kan. 64.) The statute of limitations begins to run against the beneficiary of a trust only from the time when it is openly disavowed by

the trustee. (*Janes* v. *Throckmorton*, 57 Cal. 388; *Hearst* v. *Pujol*, 44 Cal. 230; *Oliver* v. *Piatt*, 3 How. 411; Perry on Trusts, secs. 863, 864; *Van Dyck* v. *McQuade*, 86 N. Y. 53; *Le Roy* v. *Globe Ins. Co.*, 2 Edw. Ch. 657–62.) Where the relation of the parties is that of trustee and *cestui que trust* the statute of limitations does not commence to run until there has been an open denial and repudiation of the trust by the trustee, brought home to the *cestui que trust* in such manner as will require the latter to act as upon an adverse title. (*Key* v. *Hughes*, 32 W. Va. 184; *Thomas* v. *Merry*, 113 Ind. 83; *Hargis* v. *Sewell*, 87 Ky. 63; *McClure* v. *Colyear*, 80 Cal. 378–80; *Ellis* v. *Ward* (Ill., April 3, 1889), 20 N. E. Rep. 675, 676.) The statute of limitations does not begin to run in cases of trust until demand. (*Zuck* v. *Culp*, 59 Cal. 142; *Mitchell* v. *Beckman*, 64 Cal. 121; *Miles* v. *Thorne*, 38 Cal. 338; 99 Am. Dec. 384; *Love* v. *Watkins*, 40 Cal. 552; 6 Am. Rep. 624.) This action only accrued after demand, and the statute of limitations did not begin to run until demand. (Pothier on the Law of Obligations, 126, ed. of 1806; Angell on Limitations, 176, 177; *Downes* v. *Phoenix Bank*, 6 Hill, 298; Hill on Trustees, 388, note 2; *Rush* v. *Barr*, 1 Watts, 110; *Kane* v. *Bloodgood*, 7 Johns. Ch. 122; *Murray* v. *Coster*, 20 Johns. 576; 11 Am. Dec. 333.) The causes of action alleged in the complaint are not barred by the statute of limitations because the defendant corporation, through its officers and directors, was guilty of fraud, and the facts constituting the fraud were never discovered until within about a year of the commencement of this action. (*Lataillade* v. *Oreña*, 91 Cal. 575; 25 Am. St. Rep. 219.) The fraudulent concealment of a cause of action prevents the running of the statute of limitations. (*Kane* v. *Cook*, 8 Cal. 449, 456; *Lataillade* v. *Oreña*, 91 Cal. 575; 25 Am. St. Rep. 219; *Stewart* v. *McBurney* (Penn., Nov., 2, 1885), 1 Atl. Rep. 639, and cases cited at page 643, note 14; *Appeal of Deake*, 80 Me. 50, and cases cited; *Traer* v. *Clews*, 115 U. S. 537; *Sears* v. *Hicklin*, 13 Col. 143; *Carrier* v. *Chicago etc. Ry. Co.*, 79 Iowa, 80; *Cook* v. *Chi-*

*cago etc. Ry. Co.,* 81 Iowa, 551; 25 Am. St. Rep. 512; *Kilbourn* v. *Sunderland,* 130 U. S. 513; 30 Cent. L. J. 369, 373, subd. 8, and cases cited in notes 21–23, and 26, p. 391, subd. 5, and note 11; *Jacobs* v. *Snyder,* 76 Iowa, 522; 14 Am. St. Rep. 235; *Carpentier* v. *City of Oakland,* 30 Cal. 439.)

*Garber, Boalt & Bishop,* and *F. A. Berlin,* for Respondents.

The relationship between the corporation defendant and its stockholders was not one of trust which would exempt the corporation from the operation of the statute of limitations. (*Kane* v. *Bloodgood,* 7 Johns. Ch. 90; 11 Am. Dec. 417; *Landis* v. *Saxton,* 105 Mo. 486, 489, 490; 24 Am. St. Rep. 403.) Conceding that the defendant corporation is to be deemed to hold the dividends in trust for the plaintiff, and that a demand was necessary to set the statute in motion, it must have been made within a reasonable time, and, at the latest, within the statutory period for bringing the action, after the dividends were payable, and whether it was not made, or is presumed to have been made within that time, the action is, in either case, barred, unless saved by the alleged fraud. (*Codman* v. *Rogers,* 10 Pick. 119; *Palmer* v. *Palmer,* 36 Mich. 487; 25 Am. Rep. 605; *Pittsburg etc. R. R. Co.* v. *Byers,* 32 Pa. St. 22; 72 Am. Dec. 770; *Morrison* v. *Mullen,* 34 Pa. St. 17; *Hamilton* v. *Hamilton,* 18 Pa. St. 20; 55 Am. Dec. 585; *Ball* v. *Keokuk etc. Ry. Co.,* 62 Iowa, 751, 753, 754; *High* v. *Board of Commrs.,* 92 Ind. 580; *Newson* v. *Board of Commrs.,* 103 Ind. 526; *Kraft* v. *Thomas,* 123 Ind. 513, 515; 18 Am. St. Rep. 345; *McDonnell* v. *Branch Bank,* 20 Ala. 313, 319; *Wright* v. *Paine,* 62 Ala. 340, 345; 34 Am. Rep. 24; *Landis* v. *Saxton,* 105 Mo. 486, 491; 24 Am. St. Rep. 403; *Brust* v. *Barrett,* 16 Hun, 409, 413; *Atchison etc. R. R. Co.* v. *Burlingame,* 36 Kan. 628, 633, et seq.; 59 Am. Rep. 578; *Keithler* v. *Foster,* 22 Ohio St. 27. And see *Chalfin* v. *Malone,* 9 B. Mon. 498; 50 Am. Dec. 525; *Collard* v. *Tuttle,* 4 Vt. 491; 24 Am. Dec. 627.) The

true period of limitation here is two years under section
339 of the Code of Civil Procedure, subdivision 1,
which applies to all actions at law not specifically men-
tioned in other provisions. (*Piller* v. *Southern etc.
R. R. Co.*, 52 Cal. 44; *Lattin* v. *Gillette*, 95 Cal. 317, 319;
29 Am. St. Rep. 118.) The appropriate remedy to re-
cover declared dividends when, as here, a day of pay-
ment is prescribed, is an action of *assumpsit* at law.
(1 Cook on Stocks and Stockholders, 3d ed., sec. 542;
1 Spelling on Corporations, sec. 446; 2 Spelling on
Corporations, secs. 549, 589 ; 2 Beach on Private Cor-
porations, sec. 602; 1 Wood on Limitations, 2d ed. sec. 58;
*King* v. *Paterson etc. R. R. Co.*, 29 N. J. L., 82, 88; 29
N. J. L. 504, 506; *Jackson* v. *Newark etc. Co.*, 31 N. J. L. 277;
*Westchester etc. R. R. Co.* v. *Jackson*, 77 Pa. St. 321, 318;
*Dalton* v. *Midland etc. Ry. Co.*, 13 Com. B. 474–78; con-
ceded in *Cross* v. *Eureka etc. Co.*, 73 Cal. 302, 306; 2 Am.
St. Rep. 808.) Assuming that a suit for an accounting
will also lie, and that this action should be treated as such
instead of an action of *assumpsit*, it is neverthless sub-
ject to the same statutory bar, as the statute applies to
all suits both in equity and at law. (*Boyd* v. *Blankman*,
29 Cal. 44; 87 Am. Dec. 146; *Lux* v. *Haggin*, 69 Cal.
255; *Norris* v. *Haggin*, 28 Fed. Rep. 279; *Teall* v. *Slaven*,
40 Fed. Rep. 774, 777; 1 Wood on Limitations, 2d ed.,
sec. 58, p. 132.) The alleged false and fraudulent rep-
resentations to the administratrix did not excuse her
failure to make demand and bring suit. Fraudulent
concealment of a cause of action by the party liable, and
consequent ignorance thereof by the complaining party,
will not prevent or postpone the running of the statute
of limitations where the action is not one for relief on
the ground of fraud or mistake. (*Stewart* v. *Thompson*,
32 Cal. 263; *Gale* v. *McDaniel*, 72 Cal. 334; *Soule* v. *At-
kinson*, 18 Cal. 225, 228; 79 Am. Dec. 174; *Taylor* v.
*Bidwell*, 65 Cal. 489, 490; *Farris* v. *Coleman*, 103 Mo.
352, 366; *Wagner* v. *Law*, 3 Wash. 500, 517; 28 Am. St.
Rep. 56; *Rouse* v. *Southard*, 39 Me. 404.) Where the
fraud or concealment alleged, instead of being of the

substance of the cause of action, relates to some collateral or incidental matter the case is not within subdivision 4 of section 338 of the Code of Civil Procedure, and like provisions. (*Clausen* v. *Meister*, 93 Cal. 555, 557; *Chemical Nat. Bank* v. *Kissane*, 32 Fed. Rep. 429; *Myers* v. *Center*, 47 Kan. 324; *Humphreys* v. *Mattoon*, 43 Iowa, 556; *Rice* v. *Burt*, 4 Cush. 209. See, also, *Leach* v. *Moore*, 57 Ark. 583, and other cases.) The alleged false representations, not appearing to have been authorized by the company, were manifestly no excuse for the failure of the administratrix to demand payment and bring suit within the statutory time. The fraudulent concealment of a cause of action which will prevent the running of the statute must be that of the party liable upon such cause of action. (2 Wood on Limitations, 2d ed., sec. 276, p. 712. See, also, *Stevenson* v. *Robinson*, 39 Mich. 160; *Wood* v. *Williams*, 142 Ill. 269, 274, 275, 277, et seq., 280, 281; 34 Am. St. Rep. 79; *Wilson* v. *Williams* (Ill., April 3, 1893), 33 N. C. Rep. 884.) Even assuming that the alleged false representations are sufficiently alleged to have been authorized by the corporation, they do not excuse the delay, for the complaint does not show that the administratrix used "due diligence" to discover the truth by inquiring of Anderson with respect to the matter. (*Lataillade* v. *Oreña*, 91 Cal. 577; 25 Am. St. Rep. 219; *Hecht* v. *Slaney*, 72 Cal. 363, 367; *Wood* v. *Carpenter*, 101 U. S. 140; *Pearsall* v. *Smith*, 149 U. S. 231, 233, 235, 237; *Teall* v. *Slaven*, 40 Fed. Rep. 774; *St. Paul etc. Ry. Co.* v. *Sage*, 49 Fed. Rep. 315, 322; *Higgins* v. *Crouse*, 63 Hun, 130, 139, 140; *Cavanagh* v. *Britt*, 90 Ky. 273.)

McFARLAND, J.—The court below sustained a demurrer to the complaint, and, plaintiff declining to further amend, judgment went for defendants. Plaintiff appealed.

The court below correctly sustained the demurrer, and gave judgment for defendants. The demurrer was upon various grounds, among others, that the com-

plaint does not state facts sufficient to constitute a
cause of action, that the action is barred by several sec-
tions of the code about the limitations of actions, and
that the plaintiff is shown to have been guilty of laches.
The material averments of the complaint, which are
made upon information and belief, are these: The de-
fendant, the Silver King Mining Company, is a cor-
poration, and during the years 1877, 1878, and 1879 one
Benjamin W. Reagan was the owner of a large portion
of the shares of the capital stock of said corporation,
which were represented by a certificate in due form, No.
72, issued to one J. W. Anderson, who was the agent of
said Reagan for the purpose of holding said shares and
collecting the dividends thereon.   It was averred that
between the twenty-fourth day of October, 1877, and
the thirtieth day of June, 1879, the said corporation
regularly declared dividends on its stock, and that upon
said dividends " there became and was due and pay-
able from said defendant, the Silver King Mining Com-
pany, to said J. W. Anderson, trustee, as agent of said
Benjamin W. Reagan, on the shares of stock repre-
sented by said certificate No. 72," the sum of two hun-
dred and twenty-four thousand nine hundred and
thirty-two dollars and fifty cents.   Said Reagan died in-
testate on the twenty-sixth day of July, 1879, and his
widow, Mary A. Reagan, was duly appointed as admin-
istratrix.   She entered upon said office of administratrix
on the 10th of September, 1879, and continued to be
such administratrix until the 7th of November, 1882,
when she resigned, and one Joseph Nash was then duly
appointed administrator, and remained such until the
6th of March, 1884, when there was a final decree of
distribution of the estate, and a closing of the admin-
istration.   It was averred that at periods before and
after the said decree plaintiff herein, who married the
said widow, took an assignment from all the heirs and
distributees of their interest in the property of said
estate.   It is further alleged that said administratrix,
Mary A. Reagan, on or about the tenth day of Septem-

ber, 1879, " applied to the defendant corporation and its officers in the city and county of San Francisco for information as to said shares of stock, and as to whether any dividend which had been declared thereon prior to the death of said Reagan, or any part of such dividend, was unpaid, and as to whether any money was due from said defendant corporation to said estate or to her as administratrix for or on account of any dividend or dividends declared by said defendant corporation prior to the death of said Benjamin W. Reagan"; and that the said corporation and its officers, for the purpose of defrauding said administratrix at said time, stated to said administratrix "that all dividends due on said shares of stock had been paid to said J. W. Anderson, and that no money was due or owing or unpaid on account of . . . . any dividends declared on said shares of stock during the lifetime of said Benjamin W. Reagan." It is further averred that said administratrix believed said statement as to said dividends. It does not appear that said administratrix, or her successor, the said Nash, or any other person interested in the estate, ever made any further effort to discover any facts with respect to said alleged dividends. No demand was made for an inspection of the books or papers of said corporation, and no effort was made to discover from said J. W. Anderson whether or not it was true that such dividends had been paid to him. Said dividends were not included in the inventory of said estate as property thereof; and said estate was distributed and closed without any reference to said alleged dividends. No reason is shown why inquiries were not made about said dividends of the said Anderson, the only averment in that respect being simply that he was absent from the state at the time of the death of said Reagan. There is no averment of any conspiracy between said corporation and the defendant, Anderson, to conceal any facts about said dividends, and no misconduct whatever is charged against said Anderson. It is merely averred that Anderson refused to bring this suit, and that, there-

fore, he is made a party defendant, there being also an averment, "on belief," that he asserts some right over said dividends. It is further averred that on the 10th of January, 1885, the person who afterward became the attorney of record of plaintiff in this present action informed plaintiff that said dividends had not been paid, and that this was the first information plaintiff had of that fact. This action was commenced, as appears by an amendment to the record, on the twenty-seventh day of April, 1886. The complaint contains nine counts, each on a separate dividend alleged to have been declared as aforesaid during the said period above mentioned; and judgment is demanded for the said sum of two hundred and twenty-four thousand nine hundred and thirty-two dollars and fifty cents, with interest. It is further averred that on January 10, 1885, the said Mary A. Bills (formerly Mary A. Reagan) demanded of said corporation the payment to her of said dividends; and that on or about the 10th of January, 1885, the said plaintiff demanded of said corporation the payment to him of said dividends, and also made the same demand on the 6th of January, 1886, and that the defendant corporation wholly refused to comply with any of said demands.

The action was clearly barred by the statute of limitations. If the alleged liability sued on is to be considered as one founded upon an instrument in writing, it is barred by section 337 of the Code of Civil Procedure. If it be not an obligation founded upon an instrument in writing it is barred by section 339 of said code. And, under any view of the liability, it is barred by section 343. Appellant contends that an action cannot be maintained for a dividend declared by a corporation until a demand shall have been made for the same; and that, therefore, the statute of limitations did not commence to run in the case at bar until the time in 1885 or 1886 when the said demands last above stated were made. There is some conflict of authority upon the point whether such a dividend is a debt owing by the

corporation to the holder of the shares, or mere property of the shareholder rightfully in possession of the corporation, and, therefore, a conflict as to whether a demand is necessary before suit. But, in any event, no particular form of demand is necessary; and, therefore, waiving for the present the point above suggested, it is clear that what occurred between the administratrix and the corporation in 1879, as hereinbefore stated, amounted in law to a demand for the dividends. She was informed at that time by the corporation that there was no money due or owing· or unpaid on account of said dividends; and it was a clear refusal of her request for the payment of said dividends, and a denial of any liability of the corporation thereon. The corporation then and there put itself in a state of hostility to the estate of said Reagan with respect to any alleged obligation in the matter of said dividends, and no further demand or refusal was necessary; and, if suit had been brought against it, want of demand would not have been a defense. Appellant contends, however, that he is entitled to relief on the ground of fraud, and that, under subdivision 4 of section 338 of the Code of Civil Procedure, the cause of action did not accrue until what he contends to be the discovery of the facts constituting the fraud in 1885. But, waiving the question whether the averments of facts constituting the fraud in the complaint are specific enough, or whether such averments are sufficient if made only upon information and belief, still the statute of limitations cannot be avoided in a case where the facts are sufficient to put a person of ordinary intelligence and prudence on inquiry as to the truth. And in the case at bar the administratrix, Mary A. Reagan, was certainly guilty of the grossest laches in not making any effort to discover what she now alleges to be the real facts with respect to the dividends. She was informed that this large sum of money, amounting to nearly a quarter of a million, had been paid to Anderson, who she avers to have been the agent of her deceased husband, yet she never made any in-

quiry of the said Anderson as to the truth of the statement that this large amount of money had been paid to him; and she went on to administer the estate, and, without any allusion to said large sum of money, she and her successor, as administrator, and all interested in the estate, allowed it to be settled and finally distributed without any reference whatever to said dividends. Under these circumstances the plaintiff in this case cannot be heard to say that his assignors were deceived for so many years by an alleged false statement of the defendant corporation, which, if false, could have been disproved so easily by the use of the slightest diligence. The foregoing views render it unnecessary to consider other points made by respondent—as, for instance, that Anderson, being the holder of the certificate, could alone sue on it, and that the plaintiff is not the proper person to maintain an action upon said certificate; that plaintiff has not shown a proper deraignment of title from the heirs and distributees of the estate of Reagan; that the averments of fraud are not against the corporation, but simply against one or two of its officers; that, under any view, the plaintiff should have sued Anderson as trustee, and enjoined the corporation from paying dividends to him, and thus, through a decree in equity, have secured said dividends, etc.

The judgment and order appealed from are affirmed.

HARRISON, J., and VAN FLEET, J., concurred.

BEATTY, C. J.—I concur in the judgment of affirmance.

The substance of the complaint is that between November, 1877, and October, 1878, the corporation defendant declared large dividends, of which two hundred and twenty-five thousand dollars in round numbers were payable to Reagan or his trustee, Anderson, in whose name Reagan's stock stood; that no part of these dividends has been paid, and that the plaintiff, Bills, has succeeded to the right to demand and sue for the

same.   Much of the voluminous matter contained in the complaint consists of a deraignment of plaintiff's title, and another large portion consists of excuses for the long delay in making demand and commencing the action.   Excluding these matters, the cause of action is merely the refusal of the corporation to pay to its stockholder his share of declared dividends.

This is a simple action at law to which the defense of the statute of limitations is as clearly applicable as to any other, and it is barred in two years after it accrues. (Code Civ. Proc., sec. 339.)   I concede that a preliminary demand of payment is necessary to perfect the right of action, and that if such demand is made within a reasonable time the statute does not begin to run until after demand and refusal to pay.   But the stockholder cannot defeat the policy of the statute by unreasonable delay in making his demand.   The policy of the statute is to prevent suits upon stale claims, and to exempt the debtor from the necessity of proving payment after the means of proof have been lost or impaired.   If a creditor in cases like this could sue ten or twenty or any number of years after his claim accrued, and maintain his action upon the simple allegation that he had never demanded pay until at a date within the period of limitations, the debtor would never be secure, because the issue of payment could always be litigated by simply adding the other issue failure to demand.   For this reason it has been held in a great number of instances, and is undoubtedly the law, that the creditor in cases of this character must make his demand within a reasonable time after the money is received to his use.   As to what is a reasonable time, that is ordinarily determined by the analogy of the statutory periods of limitation.   If the cause of action is barred by the lapse of two years after it becomes complete, then the demand must be made within two years after the right to make it accrues, or a valid excuse must be shown for the failure to make it within that time.   Now, in this case, Mrs. Bills, then Mrs. Reagan and administratrix of Reagan's estate,

knew of these dividends as early as September, 1879, and inquired of the corporation through some of its trustees if they had been paid. She was informed that they had been paid to Anderson, the trustee. In other words, she was informed that Anderson had in his hands two hundred and twenty-five thousand dollars belonging to the heirs of the estate of which she was administratrix, but she never made any inquiry of Anderson if he had the money or the slightest effort to collect any part of it for the benefit of the heirs of Reagan whose trustee she continued to be for three years after that date. Such a thing seems incredible, but, assuming the fact to be as it is stated, the neglect to make inquiry of Anderson was gross and inexcusable laches. It is not only contrary to every dictate of ordinary business prudence, but was a grave violation of her duties to the heirs and distributees of Reagan's estate. She had the means of knowledge in her possession, and the next step in the inquiry was plainly and unmistakably indicated. She had only to apply to Anderson in order to obtain certain and exact information as to what dividends he had received on account of her intestate, and her failure to make this inquiry is fatal to her claim that she was excused from making a demand for payment by her belief that the dividends had already been paid.

It ought not to be necessary to notice again the old argument or appeal so often advanced when the defense of the statute of limitations is interposed by demurrer, that it is a shame and an outrage to allow a defendant who admits his indebtedness to defeat a recovery by this technical defense. The bar of the statute is not a technical defense. The purpose of the law is not to prevent the recovery of money which is justly due, but to prevent the recovery of money that according to all reasonable presumptions has been paid in an action commenced after the means of proving payment have been lost. It is a statute of repose and security which can never operate unjustly against persons of ordinary prudence, and which undoubtedly prevents innumer-

able frauds.  Its policy is sound and beneficent; but, even if it were not, it is the law, and is binding alike upon litigants and courts.  And it is not true in any substantial sense that a demurrer on the ground of the statute of limitations admits an existing indebtedness as matter of fact.  What the defendant really says by his plea is: I admit I was indebted to you as you allege, but your pretense that I have not paid you is conclusively refuted by the other facts which you allege.  In this case it appears that Anderson had express authority to collect these dividends—that all other dividends were actually paid, and that the corporation claims to have paid these also to Anderson.  This is its real and meritorious defense according to the allegations of the complaint, and it only demands, as every one may demand under the law, to be exempted from the necessity of proving after the lapse of years a fact which the law conclusively presumes.

I have not in this brief statement of the grounds of my concurrence attempted, and I cannot undertake, to review the authorities cited in the briefs, but I will notice one case upon which appellant especially relies— the case of *Schroeder* v. *Jahns*, 27 Cal. 274.  In that case money was deposited by the plaintiff with defendant's intestate for safekeeping, upon an express agreement that it should be kept by the depositary in trust for the depositor.  As to the necessity of making a prompt demand of payment there is a clear and manifest distinction between such cases, in which the very object of the transaction is the transfer of the custody of the money for the convenience of the parties during an indefinite period, and a case where the money is received for the mere purpose of paying it over to the person entitled upon his demand.  This distinction is recognized in the carefully considered case of *Palmer* v. *Palmer*, 36 Mich. 487; 24 Am. Rep. 605.

These are in brief the grounds upon which I concur in the judgment of affirmance.

Garoutte, J.—I dissent.

A demurrer was sustained to plaintiff's complaint upon the ground that his cause of action was barred by the statute of limitations, and, upon refusal to amend, the action was dismissed; and thereupon this appeal was taken.

The complaint contains the following allegations:

" Plaintiff further complaining avers and alleges upon information and belief that the said Silver King Mining Company, with the intent, object, purpose, and design to defraud the said Mary A. Reagan, the heirs of said Benjamin W. Reagan, said estate of said Benjamin W. Reagan, and said administratrix out of said dividend, and out of the moneys payable on account of said dividend, held by it in trust for said heirs and administratrix, and to deceive and impose upon said Mary A. Bills, as said administratrix and individually, and to fraudulently conceal the fact that said dividend had not been paid, so as to prevent an action or suit being brought therefor by said administratrix, and to make said Mary B. Bills, as said administratrix and individually, believe that such dividend had been paid, did, on or about the tenth day of September, 1875, and thereafter, and at divers other times, at and in the said city and county of San Francisco, fraudulently state, declare, and represent to said Mary A. Bills and to said administratrix that said dividend on said forty-nine thousand nine hundred and eighty-five shares of stock had been paid to said John W. Anderson, and that all dividends due on said forty-nine thousand nine hundred and eighty-five shares of stock had been paid to said J. W. Anderson, and that no money was due or owing or unpaid on account of said dividend, or on account of or on any dividends that had been declared on said forty-nine thousand nine hundred and eighty-five shares of stock during the lifetime of said Benjamin A. Reagan; that said Mary A. Bills, as said administratrix, at and before the time when said statements, declarations, and

representations were made to her, applied to the defendant corporation and its officers in the city and county of San Francisco for information as to said forty-nine thousand nine hundred and eighty-five shares of stock, and as to whether any dividend which had been declared thereon prior to the death of said Reagan, or any part of such dividend, was unpaid, and as to whether any money was due from said defendant corporation to said estate, or to her as such administratrix, for or on account of any dividend or dividends declared by said defendant corporation prior to the death of said Benjamin W. Reagan, and that such statements, declarations, and representations of the defendant corporation were made at the times of said inquiries, and when such information was being sought, and in reply to such inquiries by said administratrix, that said declarations, representations, and statements to said administratrix were made for and in behalf of said defendant corporation by certain of its officers and directors, namely. . . . . That the said administratrix, and said Mary A. Bills, was at the times of the making of said false representations, statements, and declarations, as aforesaid, and was known to said corporation and said James M. Barney and B. A. Barney, to be, ignorant as to the fact whether said dividends had been paid or not, and that she believed said statements, representations, and declarations to be true, and relied upon the same as true, and had no suspicion that any of the same was or were untrue or false, and was imposed upon and deceived by said false and fraudulent statements, representations, and declarations, and was deceived and misled and defrauded thereby. That she, as such administratrix and individually, continued to believe and rely upon said statements, representations, and declarations as true, and to act upon the same as true, until the discovery of the fact, as hereinafter alleged. . . . . That said false statements, representations, and declarations were made to said Mary A. Bills, as aforesaid, with the fraudulent intent, object, purpose, and design to

conceal the existence of the cause of action against said defendant corporation for said dividends until a sufficient time should elapse and expire to enable the defendant corporation to interpose a plea of the statute of limitations as a bar to any action to recover said dividends." The complaint further alleges that, upon the tenth day of January, 1885, plaintiff discovered the falsity of these statements, and thereupon and upon that day made a demand for a payment of the dividends.

The foregoing facts are sufficient for the purposes before us. They form an interesting recital; and if, under the circumstances here detailed, the appellant can be deprived of his money and the respondent be allowed to retain it as its own, there is something wrong in the law. It was held by the trial court that this action was barred by the statute of limitations, and this ruling is supported by counsel upon the grounds: 1. That no demand for declared dividends is necessary to set the statute of limitations in motion; and 2. That, if such demand is necessary, then the foregoing facts constitute a demand on the part of appellant for these dividends and a refusal upon the part of respondent to pay them; and by reason thereof the statute of limitations was set in motion and the action fully barred before the filing of the complaint herein.

I cannot assent to either of these propositions. It is a well-established principle of law that a demand for declared dividends is necessary by the owner of stock in a corporation before a right of action exists. It can hardly be claimed that there is any authority to the contrary. It was said in *State* v. *Baltimore etc. R. R. Co.,* 6 Gill, 387: "We are clearly of opinion that such demand was necessary before a right of action would exist on the part of the plaintiff to recover this dividend. The establishment of the principle, that suits could be instituted without demand for dividends declared by banking and other corporations, would greatly impair the value of stock held therein by rendering it necessary to employ agents to hunt up the stockholders in various parts of

the state or the union in order to prevent a multiplicity of suits, or, on a failure to do this, suits, and, of consequence, costs, might be multiplied to an alarming extent. Such a doctrine has certainly never been supposed to exist. Dividends are paid when called for, and we apprehend that limitations would not run until demand was made." (See, also, *Jones* v. *Terre Haute etc. R. R. Co.,* 57 N. Y. 205; *Philadelphia etc. R. R. Co.* v. *Corwell,* 28 Pa. St. 329; 70 Am. Dec. 128; *Scott* v. *Central etc. Co.,* 52 Barb. 69; *Hagar* v. *Union Nat. Bank,* 63 Me. 512.) Upon sound reason such should be the law. If it were otherwise, the corporation would be at the mercy of the stockholders; for, upon the declaration of a dividend, causes of action innumerable would be outstanding against the corporation. If the law were otherwise the stockholders would be largely at the mercy of the corporation, for dividends might be declared and the statute of limitations bar an action for a recovery before the stockholders were even aware that such dividends had been declared.

The foregoing facts do not in law amount to a demand and refusal to pay dividends. At the time or times there specified the administratrix, Mary A. Reagan, demanded nothing and the corporation refused nothing. The occurrence was simply this: The administratrix, knowing that her late husband was a large owner of stock in the corporation, inquired at the office if any dividends accruing upon this stock prior to his death had not been drawn, and she was then informed that all such dividends had been paid to one Anderson, the agent of her husband, and that the corporation had no dividends in its possession belonging to the estate. To resolve the inquiry of the administratrix, and the reply of the corporation to that inquiry, into a demand and refusal would require a technical, close, and even strained construction of the language, and such a construction is not favored in law in order that fraud and deception may thrive. The complaint alleges that these statements of the corporation were

false, and were made knowingly and intentionally for the express purpose of defrauding the administratrix out of this property, by concealing from her her cause of action until it was barred by the statute of limitations. It will not be allowed to do these iniquitous things and then plead them in bar of plaintiff's cause of action, if any reasonable construction can be given the language and the acts of these parties when they met, which will defeat it. Misrepresentation and falsehood, practiced for the very purpose of securing the unjust results which follow the decision of the trial court if upheld, and practiced for the very purpose of securing those results in the identical way they are proposed to be secured, do not commend themselves as matters for favorable consideration. It would be a gross wrong to deny plaintiff's right of action by construing this language into a demand and refusal, when by the language the administratrix intended to make no demand, and at the same time did not understand the language of the corporation to amount to a refusal.

I find no case in the law-books holding that similar acts and facts constitute demand and refusal. Conceding that no formal demand is necessary, still its equivalent in acts or language must be present. If a stockholder had called at the office of the corporation and inquired if a dividend had been declared, and the corporation had falsely replied in the negative, a parallel case to the one at bar would be presented, and, according to the corporation's contention, the statute would begin to run from such *demand and refusal.* This cannot be the law. While the corporation by its answer to the administratrix's inquiries may have secretly placed itself in a position of hostility to her interests, yet that is not the character of hostility contemplated by the statute of limitations. The corporation's secret hostility to her interests amounts to nothing. It was full of that same secret hostility before she ever came to it for information. It follows that if this hostility caused the statute to run, then the statute was already in motion

prior to the time she made the inquiries. As far as the statute of limitations is concerned secret hostility is no hostility, and outwardly the position of the corporation toward the administratrix bore every semblance of the greatest honesty, kindest intentions, and the friendliest feelings. This being the position of the corporation toward Mrs. Reagan, there was no hostility of interest between them, and the statute of limitations did not begin to run from the date of these conversations. If Mrs. Reagan had treated these conversations as constituting a demand and refusal, and had brought an action for the dividends against the corporation, relying upon such demand and refusal, the corporation's conduct would have been such, that very probably upon a plea by it of no demand and refusal, the court would have held against it. But the converse of the proposition, as presented in this case, by no means follows, for the corporation by its conduct was tarnished with deceit and dishonesty, and no such taint was upon her.

It is further contended in the concurring opinion of the chief justice that the demand made in January, 1885, came too late; that when a demand is necessary to set the statute of limitations in motion, it must be made within a reasonable time after the right to make it accrues; that this reasonable time must not exceed the period prescribed by statute for the limitation of the action, if no demand were necessary, and that, if such demand is not made, the action is barred, either because of the failure to make it, or that, owing to the lapse of time, it is presumed to have been made. The general principle here declared is somewhat elementary, and an abundance of authority is presented by counsel to support it. But, like other principles of law, there are exceptions to it, and, while broad in its terms, it is not broad enough to cover all cases; and this case comes within the exception. This exception is based upon the principle that the conduct of the defendant may be such as to excuse a plaintiff from sooner making a demand, and the soundness of this exception as a legal principle

is as fully recognized by the courts as is the general rule itself. In *Codman* v. *Rogers,* 10 Pick. 111, a leading case relied upon by respondent, the court said: "The question is, whether a dormant claim may be revived by a demand after seventeen years, during the whole or nearly the whole of which time a demand might have been made, but was not, and no reason is assigned for the omission"; and again: "What is to be considered a reasonable time for this purpose does not appear to be settled by any precise rule; it must depend upon circumstances. If no cause for delay can be shown it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action." In *Wright* v. *Paine,* 62 Ala. 340, 34 Am. Rep. 24, another case relied upon by respondent, the court said: "If there be any facts or circumstances which can excuse the long delay of the appellant in commencing suit and in making demand for the money, the record does not disclose them . . . . and it would be violative of the policy of the statute of limitations, and defeat the purposes it was intended to accomplish, if, without an explanation of the long delay in making demand, and the unwarrantable delay in bringing suit after the fruitless demand, until Winston was dead, the statute was held not a bar." It is thus apparent from the foregoing cases that a plaintiff may be excused from not making an earlier demand; and, if excuses are ever to be accepted by courts, then this plaintiff is excused. No case has been cited holding an action barred upon a state of facts in any way analogous to that here disclosed. All the cases assume that the plaintiff was aware that he had a claim which would ripen into a cause of action upon making a demand, and charge him with laches in not making the demand within a reasonable time. But here plaintiff could not be guilty of such laches, for she was not aware that she had any claim upon which to form a basis for a demand. More than that, she was falsely and mercenarily informed by defendant that she had no claim against it, and for this

reason alone she was lulled into a quiescent state of ignorance which prevented a discovery. Whatever diligence she may have been required by the law to exercise in the discovery of a cause of action as against third parties, it does not become the defendant, who by its fraud and misrepresentation caused the delay in making the demand, to now rely upon its bad conduct for the purpose of defeating rights based upon such demand. Much that we have said upon these lines in a previous portion of this opinion bears directly upon the question here presented. The fact that the present action is not one for relief founded upon the fraud of the corporation is not material to the case; neither is it necessary to hold that fraud practiced by a debtor upon his creditor, whereby the creditor fails to bring his action within the time allowed, is sufficient to defeat a plea of the statute of limitations made by the debtor.

The question here is not one of laches in discovering the existence of an indebtedness, but of laches in making a demand for the payment of such indebtedness. Every authority cited by respondent's counsel concedes full knowledge upon the part of the creditor of his rights during the entire period covered by the delay in making the demand, but this case presents no such state of facts. The concurring opinion goes against the appellant upon the ground, that Mrs. Reagan was negligent in discovering her cause of action, but I think that question is foreign to the case, and involves an entirely different principle. Again, if Mrs. Reagan had made no inquiries whatever of the corporation as to dividends, but had assumed them to have been paid to Reagan or his agent, it appears she would now have a cause of action; but, strange as it may seem, the diligence that she used is so effectively arrayed against her as to cause her own downfall. Anderson was in no sense her trustee; he was the trustee and agent of her husband, and a payment to him was a payment to her husband, and she had a right to so consider it; for there is nothing whatever in the case to indicate but that she was

perfectly justified in assuming, that if the money in fact had been paid to Anderson, it had been disbursed in proper and legitimate channels. If Reagan had not been insane, and Anderson had been a myth, and the corporation had stated to her at the time of her inquiries that these moneys had been paid to her husband prior to his death, as an ordinary, unsuspicious, trustful woman she would have believed the statement, and relied upon it; and she would have had a right to believe it and rely upon it. The fact that she was told the money was paid to Anderson, his trustee, does not alter the case.